CLARENCE E. FOSTER *et al.*, Petitioners-Appellants, *v.* THE MUNICIPAL OFFICERS ELECTORAL BOARD *et al.*, Respondents-Appellees.

First District (3rd Division)   No. 83—0623

Opinion filed March 30, 1983.

Odelson & Associates, Ltd., of Evergreen Park (Burton S. Odelson and Mark H. Sterk, of counsel), for appellants.

Robert F. Peck, of Johnson & Peck, of Western Springs, for appellee Municipal Officers Electoral Board.

Sheldon Gardner and George C. Pontikes, both of Foss, Schuman & Drake, of Chicago, for other appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Petitioners, Clarence E. Foster, Susan J. Smith and Deborah A. Shepler, registered voters from their respective wards in the city of Countryside, Illinois, filed objections to the nominating petitions of the Independent Party of Countryside and its candidates and asked that the party and its candidates be removed from the April 12, 1983, ballot for election to municipal offices in the city of Countryside. Respondents Carl W. Le Gant, Walter H. Klimcke and Donald M. Orndorff are respectively the party's nominees for the offices of mayor, clerk and treasurer. Respondents Roger J. Baas, Joseph P. Ficaro and Willard L. Schuessler are the party's nominees for aldermen. Respondents Walter P. Dahl, Martin F. Brodkin and P. A. Sorrentino constitute the municipal electoral board of the city of Countryside.

The electoral board denied the objections. Petitioners filed a petition for judicial review under section 10—10.1 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 10—10.1). The circuit court, after a hearing, upheld the ruling of the electoral board. Petitioners appeal, contending that the nominating petitions should have been stricken because (1) the Independent Party of Countryside was an established political party which was required to nominate its candidates by a primary election and not by petition, and (2) the name "the Independent

Party of Countryside" violated section 10—5 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 10—5), in that it is the same name as that of an established political party or includes the name of an established political party.

The record discloses:

The city of Countryside is divided into three wards. Each ward is represented by two aldermen. The mayor, clerk and treasurer run city-wide every four years. The aldermen also run every four years, except that their terms are staggered so that ward elections are held every two years.

In the April 1979 municipal election, the Independent Party of Countryside elected a mayor (Le Gant), a clerk (Klimcke), a treasurer (Orndorff), and three aldermen. The 2nd Ward aldermanic candidate was Ficaro, and the 3rd Ward candidate, Schuessler. In that election, all the candidates except the 1st Ward aldermanic candidate were elected and the party and all its candidates received over 5% of the vote cast. The Independent Party of Countryside thereby became an established political party in the city.

In the April 1981 municipal election, a party named "Countryside Independent Party" elected one alderman from each ward; in wards 1 and 2 the candidates were incumbents. The candidate in ward 3 was new. The party and each of its candidates received more than 5% of the vote cast at that election. The Countryside Independent Party thereby became an established political party. The Independent Party of Countryside had no candidates in that election.

In January 1983, a party named the "Independent Party of Countryside" filed its nomination papers for the April 12, 1983, election for a full slate of candidates, mayor (Le Gant), clerk (Klimcke), treasurer (Orndorff), 1st Ward alderman (Baas), 2nd Ward alderman (Ficaro), and 3rd Ward alderman (Schuessler).

Petitioners contend that the Independent Party of Countryside, although it ran no candidates in the last municipal election in the municipality (April 1981) and thus did not receive more than 5% of the vote in that municipal election, continued, because of the 1979 election, to be an established political party under section 10—2 of the Election Code and was required to nominate its candidates by primary and not by petition.

Petitioners also contend that the name "Independent Party of Countryside" is the same name as "Countryside Independent Party" which became an established political party in that 1981 election and thus violated section 10—5 of the Election Code.

Respondents contend that the Independent Party of Countryside

ceased to be an established political party when it did not run candidates in the last municipal election in 1981 and, accordingly, did not obtain more than 5% of the vote in that municipal election. They also contend that the name "Independent Party of Countryside" is not the same as the name "Countryside Independent Party."

The Electoral Board found:

a) Independent Party of Countryside is not an established political party in the city of Countryside;

b) Independent Party of Countryside is not the same name as Countryside Independent Party, nor is it the same name as any established political party in the city of Countryside;

c) Independent Party of Countryside does not include the name Countryside Independent party, nor does it include the name of any established political party in the city of Countryside.

In affirming the findings of the Electoral Board, the circuit court found "that the decision of the Electoral Board in regard to their finding that the name Independent Party of Countryside is not the name of an established political party or included in the name of an established political party is affirmed."

Section 10—2 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 10—2) provides in pertinent part:

> "A political party which, at the last election in any congressional district, legislative district, county, township, municipality or other political subdivision or district in the State, polled more than 5% of the entire vote cast within such territorial area or political subdivision, as the case may be, has voted as a unit for the election of officers to serve the respective territorial area of such district or political subdivision, is hereby declared to be an 'established political party' within the meaning of this Article as to such district or political subdivision."

Section 10—2, in defining an "established political party," makes specific reference to the *"last* election" in the "municipality or other political subdivision or district in the State" and requires that it has polled more than 5% of the vote cast within such "territorial area or political subdivision" and "has voted as a unit for the election of officers to serve the respective territorial area of such district or political subdivision."

A ward in a city is territorial area or political subdivision of a municipality and aldermen are officers for the respective territorial area of such district or political subdivision. The party, in voting for aldermen in specific wards, are voting "as a unit for the election of officers to serve the respective territorial area of such district or po-

litical subdivision." Therefore, the April 1981 election of ward aldermen was the "last election in the territorial area of such district or political subdivision." The Countryside Independent Party, which had nominated three candidates for aldermen, thereby became an established political party and the Independent Party of Countryside, having run no candidates in that municipal election, ceased to exist as an established political party.

Section 10—1 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 10—1) provides in pertinent part:

"Sec. 10—1. Political parties as hereinafter defined and individual voters to the number and in the manner hereinafter specified may nominate candidates for public offices whose names shall be placed upon the ballot to be furnished, as hereinafter provided: However, no nominations may be made under the provisions of this Article 10 by any established political party which at the general election next preceding, polled more than 5% of the entire vote cast in the State, district or unit of local government for which the nomination is made. ***"

The clearly expressed intent of this provision of section 10—1 is that no nominations by a political party may be made by petition if it is an established political party which at the last general election next preceding polled more than 5% of the entire vote cast in the district or unit of local government for which the nomination is made. This provision has no application to the case at bar, because Independent Party of Countryside, as related to nominations for the 1983 election, is no longer an established political party. Consequently, the vote at the 1979 election is irrelevant to its right to nominate candidates for the 1983 election.

Petitioners also point to the provision of section 10—2 which reads:

"In the case of a petition to form a new political party within a political subdivision which elects officers from districts, or from districts and at-large, such petition shall consist of separate components for each such district from which an officer is to be elected at such election. Each component may be circulated only within a district of the political subdivision and signed only by qualified electors who are residents of such district. Each sheet of such petition must contain a complete list of the names of the candidates of the party for all offices to be filled in the subdivision, but the sheets comprising each component shall request nomination of only those candidates to be elected from the particular district and of those candidates

from the entire political subdivision. Each component of the petition for each district from which an officer is to be elected must be signed by qualified voters of the district equalling in number not less than 5% of the number of voters who voted at the next preceding regular election in such district at which an officer was elected to serve the district. The entire petition, including all components, must be signed by a total of qualified voters of the political subdivision equalling in number not less than 5% of the number of voters who voted at the next preceding regular election in such political subdivision at which an officer was elected to serve the subdivision."

Under this provision, petitions for aldermanic candidates for a new party must be signed by not less than 5% of the qualified voters who voted for that aldermanic position at the "next preceding regular election in such" ward. Thus, it would appear that the petitions for nominations for aldermen in the 1983 election are required to be signed by 5% of the qualified voters from the same wards who voted in the 1981 election. It would further appear that the petitions for the nominations for the other city offices for the 1983 election are required to be signed by 5% of the voters for those offices in the 1979 election. No question, however, concerning the number of signatures required is before us.

*Merz v. Volberding* (1981), 94 Ill. App. 3d 1111, 419 N.E.2d 628, *appeal denied* (1981), 85 Ill. 2d 566, cited by petitioners, is clearly distinguishable. It involved section 10—3 of the Election Code and was concerned with the number of signatures required to nominate an independent candidate. It was not concerned with the establishment of a political party, the subject of section 10—2.

■ Petitioners also contend that the name Independent Party of Countryside on the petitions for the April 1983 election violates section 10—5 of the Election Code because it includes the name Countryside Independent Party, an established political party. That section (Ill. Rev. Stat. 1981, ch. 46, par. 10—5) provides in pertinent part:

"All certificates of nomination or nomination papers shall, besides containing the names of candidates, specify as to each:

\* \* \*

2. The party, if any, represented, expressed in not more than 5 words. However, such party shall not bear the same name as, nor include the name of any established political party as defined in this Article. This prohibition does not preclude any established political party from making nominations in those cases in which it is authorized to do so."

The prohibition is against the *same* name, not a similar one. The name Independent Party of Countryside, although similar, is not the *same* as the name Countryside Independent Party. By the same token, the name Independent Party of Countryside does not include the name Countryside Independent Party. Although the name Independent Party of Countryside, consisting of four words, includes the three words in the name Countryside Independent Party, those three words are not in the same order as they appear in the latter name. That change results in a name which is not the same name as that of an established political party; nor does it include the name of an established political party. Section 10—5 was not violated.

It must be conceded, however, that the similarity of these two names is indeed confusing. If the legislative purpose of section 10—5 was to prohibit confusion, the section should be amended to express clearly that intent. It is not the province of the courts to rewrite the section.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI and WHITE, JJ., concur.