BERNARD VASQUEZ, Petitioner-Appellant, *v.* THE MUNICIPAL OFFICERS ELECTORAL BOARD *et al.*, Respondents-Appellees.

Third District   No. 3—83—0166

Opinion filed June 24, 1983.

BARRY, J., concurring in part and dissenting in part.

Burton S. Odelson and Mark H. Sterk, both of Odelson & Associates, Ltd., of Evergreen Park, for appellant.

Franklin D. Burkey, of Joliet, for appellees.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This action was commenced in the circuit court of Will County by Bernard Vasquez seeking to review a decision of the electoral board for the village of Steger pursuant to section 10—10.1 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 10—10.1). By written objection presented to the electoral board, Bernard Vasquez objected to the nomination of Edward C. Grollemond, Richard J. Porter, Kenneth B. Shipley and Clarence T. Helsel seeking village offices under the name and style of the "Action IV Party" with respect to an election to be held on April 12, 1983. The objection requested the electoral board to strike the nominating petitions of such persons and to prevent such persons from being listed on the ballot either individually or as members of the Action IV Party. The electoral board for Steger denied the objections and upon review by the circuit court of Will County the action of the electoral board was approved. On appeal to this court, we granted an expedited briefing and hearing schedule and by our memorandum of decision, dated March 18, 1983, one Justice dissenting, we reversed the orders of the circuit court and electoral board directing that the names of the individuals should appear on the written ballot but without the designation "Action IV Party" or any other party designation. In said memorandum order we also indicated opinions of the court would follow.

The facts are substantially undisputed. The appellees nomination petitions requested that they be designated as "Action IV Party," a new political party for the village of Steger.

The Action Party has run candidates for election for many years in the village of Steger under the label "Action Party" and Action Party II, III and now VI. The same group of people headed by Louis Sherman, village president, have been involved with this party since its inception in 1977, as testified to by all three members of the electoral board. The Action Party, in 1977 ran a ticket for the municipal offices of village president, clerk and trustees; Louis Sherman ran for president, William Hodge for clerk, Milford Bisping and Edward C. Grollemond for trustees. This ticket won the election and received more than 5% of the vote cast.

At the next ensuing village election in April 1979, the Action Party again ran candidates for office. This time only three trustees were up for election, Edward C. Grollemond and Richard J. Porter being two of the candidates of said Action Party at that time. The Action Party filed their petitions as a "New Political Party" under the name Action II using the roman numeral II, a number, along with the party name, "Action Party."

In 1981, the last municipal election in Steger, the incumbent mayor (Sherman), clerk (Hodge) and trustee (Bisping) all ran for re-election under the same party name, "Action Party," using the roman numeral III after the party name. It is significant to note that all three party members who have run under the "Action" designation in 1977 and 1981 were the members of the electoral board below that decided the issues in this case. All three members testified, under oath, that the roman numeral designation after the party name signified that it was the second, third and now the fourth time the Action Party was running candidates for office.

The nomination papers objected to below reveal that Edward C. Grollemond and Richard J. Porter (who have previously run under the "Action Party" label) are running for re-election along with Kenneth B. Shipley and Clarence T. Helsel, as the "Action IV Party" candidates. The Action Party is not chartered or incorporated. It has neither officers nor members as such and no bylaws or rules. There is some continuity of personnel associated with the party label in the village elections occurring since 1977 but no activities of the group in between such village elections.

This controversy arises because, according to the appellant, statutory provisions applicable to the election have been violated. Section 10—2 of the Election Code (Ill. Rev. Stat. 1979, ch. 46, par. 10—2) provides in pertinent part:

> "A political party which, at the last election in any congressional district *** municipality or other political subdivision or

district *** polled more than 5% of the entire vote cast within such territorial area or political subdivision, as the case may be, has voted as a unit for the election of officers to serve the respective territorial area of such district or political subdivision, is hereby declared to be an 'established political party' within the meaning of this Article as to such district or political subdivision."

Section 10—2 further provides that once a party has become an established party by receiving more than 5% of the votes at an election within a political subdivision, such party's candidates shall thereafter be nominated by primary procedures or caucus procedures described in section 7—1 of the Election Code (Ill. Rev. Stat. 1979, ch. 46, par. 7—1). Section 10—1 of the Election Code (Ill. Rev. Stat. 1979, ch. 46, par. 10—1) provides that candidates for election by established parties may not be nominated under the provisions of article 10 of the Election Code, its provision for nomination applying only to new parties.

In this case it is undisputed the "Action Party" was a new party in 1977 receiving more than 5% of the vote for village candidates at that election. It is also undisputed that "Action II Party" and "Action III Party" received more than 5% of the vote cast for village officers in the elections of 1979 and 1981, even though in each of those years the parties so designated petitioned for nomination as a new party.

■ The initial question to be resolved is whether "Action IV Party" is the same party which was designated "Action III Party" in 1981 and in prior years under the Action Party label. We hold that such party is the same party and does not become a new party in terms of label designation merely by adding a number which according to the witnesses, merely designated the number of times the party had been on the ballot. The defendants for all practical purposes, concede the "Action IV Party" was not a new party because under the statutory definition it as a party had received more than 5% of the total vote cast at the next preceding election for village officers and was thereby an "established party" as described in the statute.

The appellees suggest they are not an established party because they are not organized as a party. However, the statutes neither refer to or require that parties either new or established be organized in any particular form, and if the association form which the individuals have adopted in their desire to associate as a new party is sufficient for that purpose it is also sufficient for the purpose of becoming an established party when the group receives the percentage of the vote designated in the statute. If continuing formal organization were required, then the statute would be meaningless because the general

purpose and intent of the statute could easily be circumvented either by not organizing or changing the formal organization structure at each election. Nor do we believe the statute can be said to apply only to major parties meaning either the Republican or Democratic party. There is obviously from a reading of the statute, no such exception described therein and indeed no reason appears in the Act either why it would be so limited or why it should not apply to all parties once they have received the substantial percentage of votes cast required by the statute.

■ The statute, section 10—2 of the Election Code (Ill. Rev. Stat. 1979, ch. 46, par. 10—2), provides that nominations by "established parties" may not be made under article 10 of the Election Code but can only be made under article 7 of the Election Code. It is undisputed that article 7 of the Election Code was not complied with, and the only provision of the Election Code which the appellees sought nomination under was article 10 and this they were not entitled to do.

■ Having determined that the appellees were not properly nominated as candidates of the "Action IV Party," the question remains as to whether the nominations are completely void or whether it is only the party designation which is invalid and we hold the latter is true. In our opinion the nominating petitions were signed by sufficient voters to entitle the appellees to be placed on the ballot as individuals, and the statutory prohibition against designating themselves as a new party when they are not is amply affectuated by striking the party designation. See *Doty v. Representation For Every Person (REP) Party* (1981), 97 Ill. App. 3d 316, 422 N.E.2d 1156.

For the foregoing reasons the judgment of the circuit court of Will County and the decision of the electoral board of the village of Steger are reversed to the extent they permit the designation of the appellees as the "Action IV Party." The appellees as individuals, without any party designation, may be placed on the written ballot.

Reversed in part, affirmed in part.

ALLOY, J., concurs.

JUSTICE BARRY, concurring in part and dissenting in part:

I agree with the majority to the extent that it allowed the names of the respondent candidates to appear on the official ballot. I do not agree that the party designation "Action IV Party" was an improper designation for the respondent party; and I, therefore, dissent from that portion of the majority opinion which reverses the decision of the

electoral board to permit respondents' designation as "Action IV Party" to be included on the ballot.

First, some of the history of the matter in the village of Steger before us should be again detailed. Respondent William Hodge first ran for village clerk under the "Good Government" party label in 1969. He ran to succeed himself in 1973 under the label "Better Government," as did Louis Sherman and Marcia Piacentini for village president and trustee, respectively. Hodge again ran for clerk in 1977 under "Action Party." The latter ticket was also comprised of Louis Sherman for village president, Marcia Piacentini, Don Paradiso and Garland Love for trustees. At the ensuing election in 1979, when three trustees were to be elected, three candidates petitioned using the party label, "Action II Party"—Bernard Vasquez, the petitioner herein, Edward C. Grollemond and Richard J. Porter, respondents herein; and in 1981, five candidates for the village offices—Sherman, Hodge, Milford Bisping, Alvin Harcus and "Red" Loman—petitioned under the party name "Action III Party," and were unopposed. Then, in 1983, four candidates for trustee filed petitions, again as a new political party named "Action IV Party." Of the four 1983 "Action IV Party" candidates, two had not previously been candidates and had not had any association with any of the aforementioned parties.

Though the party labels bear obvious similarities, they are clearly distinguished by the insertion of Roman numerals "II," "III" and "IV" in between the words "Action" and "Party," not "after the party name" as suggested in the majority opinion. Mr. Vasquez testified that the citizens of Steger associate the Action Party with Lou Sherman and Bill Hodge "because they are the founders of such *parties*." (Emphasis added.) It is also important to note that no candidate filed in 1983 using the party designation "Action III Party" or, for that matter, any other party label which used the words "Action Party."

As I understand article 10 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 10—1 *et seq.*), the purpose is to provide a means for those choosing to associate politically to place a slate of candidates on the ballot and, at the same time, to prevent confusion between the name used by those so associated and that of an established party. We must also keep in mind that, like the right to vote, access to the ballot as a candidate is a basic political right that should not be unduly restricted.

The majority seems to base its holding upon its conclusion that respondents "for all practical purposes" concede that "Action IV Party" was not a new party because it received more than 5% of the

total vote at the "next preceeeding [*sic*] election." I have searched the briefs and the record and can find no such concession by the respondents. The respondents do not deny, of course, that some of them in the past have used the "Action" designations, and respondents do state that "Action III Party" was an established political party *after* the 1981 village election because "Action III Party" received more than 5% of the vote in the 1981 election. And, respondents stated during oral argument before this court that "Action IV Party" contains the name *in part* of "Action III Party," which had been an established political party. These admissions do not, in my opinion, amount to a concession that "Action IV Party" was an established party; and they do not detract from respondents' position in this appeal. Further, as indicated by the majority, the record is totally devoid of any party structure or activity of any kind by the respondents between general elections.

When a party is established under the 5% rule in one election year and it fails to field any candidate for purposes of the subsequent election, then that party ceases to exist as an established political party. (*Foster v. Municipal Officers Electoral Board* (1983), 113 Ill. App. 3d 721, 447 N.E.2d 990.) Accordingly, "Action III Party" ceased to be an established party when it failed to nominate candidates for the 1983 municipal primary (as did "Action Party" in 1979 and "Action II Party" in 1981). To hold otherwise would allow for independent parties and splinter groups to remain "alive" indefinitely.

In *Foster*, the issue before us was squarely addressed, and, in my opinion, correctly determined. There, the "Countryside Independent Party" elected ward aldermen in the city of Countryside in 1981. The party and its candidates received more than 5% of the vote cast. In 1983, a party named the "Independent Party of Countryside" petitioned as a new party. Another "Independent Party of Countryside" had elected candidates in 1979. The reviewing court held that the "Independent Party of Countryside" had been an established political party after the 1979 municipal election, but then ceased to exist as an established political party when it slated no candidates in the 1981 primary. Hence, the "Independent Party of Countryside" was a "new" party in 1983, and nomination by petition for the general election was proper.

The appellate court in *Foster* also held that the name "Independent Party of Countryside" was not the same as the name "Countryside Independent Party" within the meaning of section 10—5(2) of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 10—5(2)), which provides that a new party "shall not bear the same name as, nor include

the name of any established political party ***." The fact that the words were in different order in one name than in the other was sufficient to make the names different. Analogizing to *Foster*, I am convinced that the change from "Action III Party" to "Action IV Party" was likewise sufficient to make the names different. The fact that some of the individual members of "Action III Party" created and became members of the "Action IV Party" is not controlling. In 1983 "Action IV Party" was a new political party and, as in *Foster*, nomination by petition was proper.

In addition it is clear in the instant case that there was no confusion among the electorate since only one slate of nominees used the words "Action Party" in their party name. Further, the absence of confusion was admitted in uncontradicted testimony before the electoral board and by counsel for the petitioner and counsel for the respondents in oral argument before this court. In this connection it is interesting to note that the *Foster* court thought the similarity in names was confusing but that the legislative purpose of section 10—5 was not clearly expressed to be to prohibit confusion.

I believe that section 10—5(2) is primarily intended to prevent a new political party from trading on the name of an established party—particularly one of the major parties. An example of the sort of abuse that the statute seeks to prevent was demonstrated in *Doty v. Representation for Every Person (REP) Party* (1981), 97 Ill. App. 3d 316, 422 N.E.2d 1156. There, the word "REP" was determined to be within the proscription of the statute because it was readily susceptible of interpretation as "Republican," one of the major established parties.

By contrast, I find nothing inherently confusing in the use of "Action IV Party" as a party designation for the 1983 municipal election in the village of Steger—certainly it cannot be said that the instant case falls within the rule of *Doty*. Finally, it is common knowledge that smaller units of government in Illinois often have difficulty attracting candidates, and can ill afford costly primaries, particularly when no candidates seek nomination. The statutory scheme of the Election Code, as discussed herein, benefits such governmental entities as well as the individuals who seek to serve them. The general election petition procedure has become standard in local elections. I believe the statutory purpose is not violated when, as here, no confusion or advantage results.

For the foregoing reasons, I would affirm the decision of the electoral board.