RICHARD BALLENTINE *et al.*, Petitioners-Appellants and Cross-Appellees, v. HENRY BARDWELL *et al.*, Respondents-Appellees and Cross-Appellants.

First District (4th Division)   No. 85—648

Opinion filed April 25, 1985.

Tatel & Howlett, P.C., of Chicago (John E. Howlett, Jr., of counsel), for appellants.

Burton S. Odelson and Mark H. Sterk, both of Evergreen Park, for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiffs, party candidates of a newly formed political party, appeal from the decisions of the electoral board and the circuit court of Cook County striking their names from the official ballot for the April 2, 1985, municipal election in the village of Robbins.

Defendant, electoral board, cross appeals from certain findings of the trial court in plaintiffs' favor.

We affirm in part and reverse in part.

BACKGROUND

On January 14, 1985, plaintiffs, Richard Ballentine, Diane Davis, James W. Barnes, Sr., George R. Walker, Jr., and Kenneth Moody, filed their nominating petitions and loyalty oaths with the clerk of the village of Robbins, requesting that their names be printed on the ballot for the April 2, 1985, municipal election as candidates of the "New United Idea" Party, a newly formed political party.

On January 18, 1985, some four days after the filing of their nomination petitions but within the filing period set forth under section 10—6 of the Election Code (Ill. Rev. Stat. 1983, ch. 46, par. 10—6), plaintiffs filed their statements of candidacy pursuant to section 10—5 of the Code (Ill. Rev. Stat. 1983, ch. 46, par. 10—5).

An objector's petition was filed with the village clerk on January 26, 1985, complaining, *inter alia*, that plaintiffs' nomination papers were defective in that (1) the statements of candidacy were not filed simultaneously with the nomination petitions; (2) plaintiffs' party name impermissibly included the name of an established political party, in violation of section 10—5(2) of the Election Code (Ill. Rev. Stat. 1983, ch. 46, par. 10—5(2)); and (3) plaintiffs failed to file a valid "certificate of officers" in violation of section 10—5. Ill. Ann. Stat., ch. 46, par. 10—5 (Smith-Hurd Supp. 1983).

A hearing was held on the merits of the objector's petition, following which defendant electoral board (board) sustained the petition and struck the names of the party candidates from the official ballots. The board's decision was affirmed on judicial review before the circuit court of Cook County, which found plaintiffs' failure to simultaneously file their statements of candidacy with their nomination petitions to vitiate their candidacy.

Plaintiffs brought this appeal, seeking an expedited briefing and hearing schedule, and defendant electoral board cross-appealed.

Following oral argument, an order was handed down by this court on March 28, 1985, (1) directing the clerk of the village of Robbins to print the names of the candidates without party designation on the official ballot for the election to be held on April 2, 1985; (2) denying the relief sought by defendant; and, (3) informing the parties that a written disposition of this cause would issue at the court's convenience.

We affirm in part and reverse in part.

OPINION

I

█ On appeal, plaintiffs address only that issue that the trial court found to be dispositive, namely, whether their failure to simultaneously file their statements of candidacy with their nomination petitions mandated that their names be stricken from the ballot. Plaintiffs contend that, by filing their statements of candidacy within the statutorily prescribed filing period, they have substantially complied with the requirements of the Illinois Election Code.

Defendant, on the other hand, contends that the combined reading of sections 10—4, 10—5 and 1—3 of the Election Code mandates the removal of the candidates' names from the election ballot due to their failure to simultaneously file their statements of candidacy with their nominating papers. By this contention, defendant in essence maintains that such simultaneous action is mandatory rather than directory. We cannot agree with defendant's interpretation of these provisions as applied to the facts and circumstances of the instant case.

Whether an enactment is directory or mandatory depends on the legislative intention, to be ascertained from the nature and object of the act and the consequences which would result from any given construction. (*Village of Mundelein v. Hartnett* (1983), 117 Ill. App. 3d 1011, 454 N.E.2d 29.) The use of the word "shall" in a statutory provision, though generally regarded as mandatory, does not have a fixed or inflexible meaning and may, in fact, be construed as meaning "may" depending on the legislative intent. *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 373 N.E.2d 1332.

The word "shall," in construing election statutes, has been held directory rather than mandatory in a variety of cases. (*People ex rel. Meyer v. Kerner* (1966), 35 Ill. 2d 33, 219 N.E.2d 617.) The criteria for determining whether the provisions of an election statute are mandatory or directory were set forth by the *Kerner* court, and later affirmed in *People ex rel. Bell v. Powell* (1966), 35 Ill. 2d 381, 221 N.E.2d 272, as follows:

"Where a statute provides that an election shall be rendered void by failure of those involved in the election process to perform certain duties, the courts are bound to enforce it as mandatory. [Citations.] But, where the statute does not expressly declare its provisions to be mandatory or compliance therewith to be essential to its validity, the failure to strictly comply, in the absence of fraud or a showing that the merits of the election were affected thereby, is not fatal. [Citation.]" *People ex*

*rel. Meyer v. Kerner* (1966), 35 Ill. 2d 33, 39, 219 N.E.2d 617, 620.

## II

Here, defendant contends that the election statute expressly declares the simultaneous submission of statements of candidacy with nomination petitions to be mandatory. To support this contention, defendant first points to section 10—4, which contains the express declaration that "[n]o signature shall be valid or counted *** unless the requirements of this Section are complied with." (Ill. Rev. Stat. 1983, ch. 46, par. 10—4.) To understand this express declaration, the provision must be read within the context of the section, which states, in pertinent part, as follows:

"Sec. 10—4. All petitions for nomination under this Article 10 for candidates for public office in this State, shall in addition to other requirements provided by law, be as follows: Such petitions shall consist of sheets of uniform size and each sheet shall contain, above the space for signature, an appropriate heading, giving the information as to the name of candidate or candidates in whose behalf such petition is signed; ***. Such petition shall be signed by the qualified voters in their own proper persons only, and opposite the signature of each signer his residence address shall be written or printed ***. Standard abbreviations may be used in writing the residence address ***. *No signature shall be valid or be counted in considering the validity or sufficiency of such petition unless the requirements of this Section are complied with.*" (Emphasis added.)

Section 10—4 sets forth the contents requirements of a circulator's affidavit. The statutory requirements of the circulator's affidavit of a petition for nomination, as set forth above, have been held to be mandatory and not directory. (*Schumann v. Kumarich* (1981), 102 Ill. App. 3d 454, 430 N.E.2d 173.) Thus, while it is clear that the language relied upon by defendant is indeed mandatory in nature, it is also clear that such language refers directly and exclusively to compliance with the contents requirements of a circulator's affidavit and the consequence that will follow a failure to comply with those requirements. *Havens v. Miller* (1981), 102 Ill. App. 3d 558, 429 N.E.2d 1292.

In the instant case, we are not, however, dealing with the candidates' failure to include specific details in the circulator's affidavit. We are dealing with the candidates' failure to simultaneously file their statements of candidacy, as required by section 10—5, with their nom-

ination petitions. We therefore find the mandatory language of section 10—4 inapposite to the facts at bar.

## III

■ Defendant next contends that, pursuant to section 1—3 of the Election Code, "petition of candidacy" includes the statement of candidacy such that the "petition" referred to in section 10—4 above and the mandate thereto attached necessarily encompasses not only the circulator's affidavit but also the statement of candidacy. (Ill. Rev. Stat. 1983, ch. 46, par. 1—3(12).) We find defendant's extension of the plain language of the definition set forth in section 1—3(12) to be unwarranted.

The definitions of terms within a legislative enactment will be sustained to the exclusion of hypothetical indulgences. (*Chicago-Midwest Meat Association v. City of Evanston* (1981), 96 Ill. App. 3d 966, 422 N.E.2d 205.) The appellate court cannot restrict or enlarge the plain meaning of an unambiguous statute. (*Denton v. Hood* (1984), 122 Ill. App. 3d 813, 461 N.E.2d 1069.) When the language of a statute is clear and unambiguous, the only legitimate function of the court is to enforce the law as enacted by the legislature. *Totten v. State Board of Elections* (1980), 79 Ill. 2d 288, 403 N.E.2d 225.

Section 1—3(12) clearly and unambiguously states that the definition of "petition of candidacy" set forth therein is "as used in Sections 7—10 and 7—10.1 of the Election Code." (Ill. Rev. Stat. 1983, ch. 46, par. 1—3(12).) The legislature thereby expressly limited that definition to those sections of the Code. As an appellate court, and in the absence of any ambiguity, we cannot enlarge the plain meaning of that statute to encompass the interpretation defendant urges. We therefore find that section 1—3(12), which explicitly refers to sections 7—10 and 7—10.1 and the terminology used therein, is inapposite to the instant issue.

## IV

■ The final section relied on by defendant in its assertion that the simultaneous filing of statements of candidacy and petitions of nomination is mandatory is section 10—5 of the Election Code. (Ill. Ann. Stat., ch. 46, par. 10—5 (Smith-Hurd Supp. 1983).) Section 10—5 reads, in pertinent part, as follows:

"Sec. 10—5. All petitions for nomination shall, besides containing the names of candidates, specify as to each:

1. The office or offices to which such candidate or candidates shall be nominated.

2. The new political party ***

3. The place of residence of any such candidate ***

Such certificate of nomination or nomination papers in addition *shall include as a part thereof, the oath* required by Section 7.10.1 of this Act and must include a statement of candidacy for each of the candidates named therein ***. [Emphasis added.]

\* \* \*

Nomination papers filed under this Section are not valid if the candidate named therein fails to file a statement of economic interests *** by the end of the period for the filing of nomination papers ***."

The cases defendant cites in support of its mandatory reading of section 10—5 either interpret section 7—10 (Ill. Rev. Stat. 1983, ch. 46, par. 7—10) (*Bowe v. Chicago Electoral Board* (1980), 79 Ill. 2d 469, 404 N.E.2d 180; *Lawlor v. Municipal Officer Electoral Board* (1975), 28 Ill. App. 3d 823, 329 N.E.2d 436); interpret the content requirements of section 10—4 (*Schumann v. Kumarich* (1981), 102 Ill. App. 3d 454, 430 N.E.2d 173); or, interpret the statement of economic interests requirement of section 10—5. (*Havens v. Miller* (1981), 102 Ill. App. 3d 558, 429 N.E.2d 1292.) While all of these requirements, based on the express language of the Code, are clearly mandatory, defendant presents no case that interprets section 10—5 as mandating a candidate's removal from the ballot for failure to simultaneously file the statement of candidacy with the nomination papers.

In interpreting this particular segment of section 10—5, we first note, by our reading of the statute as a whole, that those parts of the Code that are mandatory, *i.e.*, where the omission to follow certain procedures renders the proceeding void, are expressly so, and in addition to requiring the doing of the things specified, they prescribe the result that will follow if they are not done. (*In re Special Education Placement of Walker* (1982), 107 Ill. App. 3d 1053, 438 N.E.2d 582.) Such a mandatory provision is that part of section 10—5 that declares nomination papers to be invalid if the candidate fails to file a statement of economic interests, and that part of section 10—4 that declares a signature shall be invalid unless the requirements of that section are followed. Ill. Rev. Stat. 1983, ch. 46, pars. 10—4, 10—5.

The provision at issue here, that part of section 10—5 referring to the statement of candidacy, contains no language suggesting that the failure to file the statement simultaneously with the nomination papers renders the proceeding void. The phrase "shall include *as part thereof*" appears to refer to the oath required by section 7.10.1,

rather than to the statement of candidacy, which must also be included with the nomination papers. The inference is that while the statement of candidacy must be included, it is not fatal if it is not included as "part thereof."

Moreover, the validity of the nomination papers as a whole may not be assessed prior to the close of the filing period. The candidate is given until the close of the filing period to file his statement of economic interests. The failure to file this statement renders the nomination papers invalid. (Ill. Rev. Stat. 1983, ch. 46, par. 10—5.) It makes little sense to allow the candidate until the close of the filing period to file this crucial paper and at the same time render the statement of candidacy, which itself makes reference to the statement of economic interests filed or *to be filed*, invalid prior to this juncture.

While all the requirements of the election law are mandatory in the sense that they impose a duty of obedience on those who come within their purview, and even directory provisions may not be disregarded, it does not follow that every departure or omission will vitiate the ballot or the proceeding. (*People ex rel. Harris v. Powell* (1966), 35 Ill. 2d 384, 221 N.E.2d 274.) A candidate is required to file a statement of candidacy, and he is directed to include that statement of candidacy with his nomination papers. Here, the candidates failed to include the statement of candidacy with their nomination papers. They did, however, file the statements within the proper filing period and prior to the time the statement of economic interests was due. Their qualifications for office could not have been assessed prior to the time their statements of candidacy were filed. For this reason, little if any prejudice resulted from their failure to file the statements of candidacy simultaneously with the nomination papers.

We therefore conclude that, while the statement of candidacy requirement of section 10—5 is mandatory in the sense that it may not be disregarded, it is not mandatory in the sense that substantial rather than strict compliance therewith mandates removal of the candidates' names from the ballot.

V

■ We next address the issues brought by the electoral board on cross-appeal. The board first contends that the circuit court erred in reversing the board's finding that plaintiffs violated section 10—5(2) of the Election Code by using the name of an existing political party, the "United Idea Party," in the name of their new political party, the "New United Idea Party." (Ill. Rev. Stat. 1983, ch. 46, par. 10—5(2).) The prohibition of section 10—5(2) reads as follows:

"2. [The new political party] *** shall not bear the same name as, nor include the name of any established political party as defined in this Article."

It is undisputed that the name "New United Idea Party" included the name of an established political party, the "United Idea Party," which fielded a slate of candidates at the municipal election held in Robbins on April 12, 1983, such as to constitute an established political party under the Code. (Ill. Rev. Stat. 1983, ch. 46, par. 10—2.) However, defendant errs in its contention that the circuit court reversed the board's finding on this issue. The record makes clear that the circuit court sustained the board's finding, but ruled, pursuant to *Vasquez v. Municipal Officers Electoral Board* (1983), 115 Ill. App. 3d 1014, 450 N.E.2d 1379, that the candidates would be allowed to appear on the ballot without party designation. We concur with the able trial court's ruling.

In *Vasquez*, the candidates' nomination petitions requested that they be designated as the "Action IV Party," a new political party with respect to an election to be held on April 12, 1983, in the village of Steger. The "Action Party" had run candidates for election in the village for many years, under the labels of "Action Party," "Action Party II," and "Action Party III." "Action Party III" had slated candidates in the 1981 election and received more than 5% of the vote cast for village officers such as to render it an established political party within the purview of section 10—2 of the Election Code. Ill. Rev. Stat. 1983, ch. 46, par. 10—2.

The *Vasquez* court first determined that "Action IV" was the same party which was designated as "Action III" and in prior years under the "Action" label and that it did not become a new political party merely by adding a Roman numeral at the end of the party name. Accordingly, the court found that the candidates failed to comply with section 10—2 of the Election Code and that they had wrongfully sought nomination under article 10 as a new political party. *Vasquez v. Municipal Officers Electoral Board* (1983), 115 Ill. App. 3d 1014, 450 N.E.2d 1379.

Having determined that the candidates were not properly nominated under article 10 and the "Action IV" party label, the *Vasquez* court then determined whether the nominations were completely void or whether it was only the party designation which was invalid. The court found the latter alternative to be true, reasoning as follows:

"In our opinion the nominating petitions were signed by sufficient voters to entitle the [candidates] to be placed on the ballot as individuals, and the statutory prohibition against designating

themselves as a new party when they are not is amply effectuated by striking the party designation." 115 Ill. App. 3d 1014, 1018, 450 N.E.2d 1370, 1382.

Justice Barry, concurring in part and dissenting in part to the decision, agreed that the candidates should be allowed to appear on the ballot but found that the change from "Action III Party" to "Action IV Party" was sufficient to make the names different such that the candidates had properly been nominated as a new political party.

Plaintiffs here have acquiesced to being slated on the official ballot without party designation. We therefore find, pursuant to *Vasquez*, that while they may have in fact violated section 10–5(2) of the Election Code, as the trial court found, they were nevertheless entitled to appear on the ballot as individuals and that the statutory prohibition against including the name of an established political party within the name of a new political party was amply effectuated by striking the party designation.

## VI

■■ Defendant's final contention on appeal is that plaintiffs failed to file a certificate of officers in violation of section 10–5 of the Election Code. (Ill. Ann. Stat., ch. 46, par. 10–5 (Smith-Hurd Supp. 1983).) The parties agree that given the trial court's resolution of the previous issue, namely, allowing the candidates to be slated without party designation, this issue is now moot. Having affirmed the trial court's finding on the issue of party designation, we therefore need not address defendant's final contention.

For all of the foregoing reasons, and consistent with the order of this court handed down on March 28, 1985, we affirm in part and reverse in part.

Affirmed in part and reversed in part.

JOHNSON and BUCKLEY, JJ., concur.