Docket No. 102077.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

JOAN MARGARET O'BRIEN *et al.*, Appellees, v. JESSE WHITE,
  Secretary of State of Illinois, *et al.*, Appellants.

*Opinion filed March 6, 2006.*

CHIEF JUSTICE THOMAS delivered the judgment of the court, with opinion.

Justices Freeman, McMorrow, Fitzgerald, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

## OPINION

At issue is the constitutionality of section 7A–1 of the Election Code (10 ILCS 5/7A–1 (West 2004)), which sets a deadline by which an elected judge who wishes to be retained in office must file a declaration of candidacy to succeed himself or herself.

## BACKGROUND

Plaintiff Joan Margaret O'Brien was elected judge of the circuit court of Cook County in November 2000. Wishing to run for retention in the November 2006 general election, O'Brien filed with the Secretary of State a declaration of candidacy to succeed herself. She filed the declaration on December 6,

2005, which was one day after the deadline set by section 7A–1 of the Election Code. That section provides that the declaration must be filed "on or before the first Monday in December before the general election preceding the expiration of [the judge's] term of office." 10 ILCS 5/7A–1 (West 2004). The Secretary refused to accept the declaration and, on December 8, 2005, certified to the State Board of Elections that O'Brien had not timely filed a retention declaration. The State Board then certified that O'Brien's position would become vacant in December 2006.

O'Brien then filed in the circuit court of Cook County a verified complaint for *mandamus* and other relief against defendants Jesse White, in his official capacity as Secretary of State; the State Board of Elections and all of its members in their official capacities; David D. Orr, in his official capacity as Cook County clerk; and the Chicago board of election commissioners. The complaint alleged that the deadline set by section 7A–1 is unconstitutional because it conflicts with a provision of the Illinois Constitution that allows a judge to file a declaration of candidacy to succeed himself or herself "[n]ot less than six months before the general election preceding the expiration of his term of office." Ill. Const. 1970, art. VI, §12(d). Because O'Brien filed her declaration of candidacy within this time frame, she asserted that the Secretary of State was required to accept it. Count I sought writs of *mandamus* requiring (1) the Secretary of State to accept O'Brien's declaration of candidacy and to amend his certification to show O'Brien as eligible to run for retention; (2) the State Board of Elections and its members to accept the amended certification *nunc pro tunc* and not to accept petitions from candidates seeking to fill a putative O'Brien vacancy; and (3) commanding the Cook County clerk and the Chicago board of election commissioners to place the question of O'Brien's retention on the November 7, 2006, general election ballot. Counts II and III sought similar relief through declaratory judgments and injunctions.

O'Brien then moved for a temporary restraining order (TRO). Her TRO motion incorporated the allegations of her complaint. In the motion, O'Brien argued that she had

established a clearly ascertainable right upon which relief could be granted; that she would suffer irreparable injury if the relief was not granted; that she had no adequate remedy at law; and that she was likely to succeed on the merits. She gave three reasons why she was likely to succeed on the merits: (1) the statute expressly conflicted with a constitutional provision addressing the same subject; (2) the statute violated separation of powers principles; and (3) the statute was directory, not mandatory.

The circuit court allowed two other judges to intervene in the action. Intervening plaintiff Carole Kamin Bellows was appointed to serve as a Cook County circuit court judge in November 1986. She was elected in 1988 and thereafter retained on two occasions. She was eligible to seek retention again in November 2006, and she filed her declaration of candidacy to succeed herself on December 15, 2005. The Secretary of State refused to accept the declaration, and the State Board certified the position as open and subject to nomination at the March 2006 primary election. Intervening plaintiff James M. Varga was elected as a Cook County circuit court judge in November 1994. He was retained in November 2000 and was eligible to run for retention again in November 2006. On December 8, 2005, he verbally notified the Secretary of State that he intended to seek retention and also sent a copy of the declaration via facsimile machine. He sent his declaration by Federal Express to the Secretary of State that day, but it was not received until December 12, 2005. The Secretary of State refused to accept the declaration, and the State Board certified Varga's position as becoming vacant in December 2006.

On December 20, 2005, the circuit court granted plaintiffs' motion for a temporary restraining order. The defendants did not dispute that plaintiffs had ascertainable rights in need of protection, lacked an adequate remedy at law, and would suffer irreparable harm if no relief was granted. The court thus confined its analysis to whether plaintiffs had established a likelihood of success on the merits. The court concluded that plaintiffs had established a likelihood of success on their claim that section 7A–1 was unconstitutional under article VI, section

12(d), of the Illinois Constitution. Accordingly, the court granted a TRO enjoining the Secretary of State from certifying to the State Board of Elections that vacancies existed in the offices of circuit court judge currently occupied by plaintiffs. The court also enjoined the State Board of Elections from accepting nominating petitions from any candidate seeking to be placed on the March 2006 primary election ballot to succeed to the offices of circuit court judge currently held by plaintiffs.

Defendants petitioned for review of the TRO under Supreme Court Rule 307(d) (188 Ill. 2d R. 307(d)). The appellate court reversed. *O'Brien v. White*, No. 1–05–4043 (2006). The appellate court noted that the purpose of a temporary restraining order is to maintain the status quo until the case is disposed of on the merits. Here, the circuit court's order had altered, rather than maintained, the status quo because the Secretary had already refused to accept the declarations of candidacy and had certified the vacancies to the State Board of Elections. The appellate court also held that plaintiffs had failed to demonstrate irreparable harm if the State Board accepted nominating petitions from other candidates, reasoning that, if plaintiffs ultimately prevailed in this suit, the effect would be that no vacancies had ever existed and that no one could be elected to their positions.

Plaintiffs then moved for summary judgment, incorporating by reference all of the arguments they made in previous filings. The trial court granted the motion. The trial court disagreed with plaintiffs' arguments that section 7A–1 was merely directory and that it violated separation of powers principles. The trial court agreed with plaintiffs, however, that section 7A–1 was unconstitutional under article VI, section 12(d). The circuit court noted that the constitution created two schemes for electing judges. The first involves the initial election process, and the constitution gives the General Assembly the authority to determine the content of nominating petitions and whether judges will be elected at general or judicial elections. See Ill. Const. 1970, art. VI, §12(a). The constitution further allows the General Assembly to determine how vacancies in the offices of supreme, appellate, or circuit court judge shall be filled. If the General Assembly does not do so, vacancies are filled by the

ˇ4ˇ

supreme court. Ill. Const. 1970, art. VI, §12(c).

The second election scheme is a nonpartisan retention scheme for elected judges. Here, the constitution is specific in its requirements for how the retention process should be carried out. Ill. Const. 1970, art. VI, §12(d). One of the provisions of section 12(d) is that the judge may file for retention "[n]ot less than six months before the general election preceding the expiration of his term of office." Ill. Const. 1970, art. VI, §12(d). The circuit court concluded that section 12(d) limited the General Assembly's role in the retention process, and no authority was given to the General Assembly to alter the time limits set forth in the constitution. Thus, the General Assembly had exceeded its authority in setting a deadline different from the one established by the constitution. The circuit court rejected defendants' argument that section 12(d) could be interpreted to mean that the General Assembly can set a different deadline by which judges must file for retention, as long as that deadline is not less than six months before the general election. The circuit court entered an order (1) declaring section 7A–1 unconstitutional; (2) issuing a writ of *mandamus* commanding the Secretary of State to accept plaintiffs' declarations of candidacy to succeed themselves and to certify to the State Board of Elections that they are candidates for retention in the 2006 general election; and (3) permanently enjoining the State Board of Elections from certifying any candidates to fill the offices of judge held by plaintiffs. Pursuant to Supreme Court Rule 302(a) (134 Ill. 2d R. 302(a)), the Secretary of State, the State Board of Elections, and the members of the State Board of Elections,[1] appealed directly to this court.

[1] Defendants State Board of Elections and all of its members do not take a position on the legal arguments set forth in defendants' brief, but request the benefit of any order or judgment entered in favor of defendants.

ANALYSIS

Article VI, section 12(d), of the Illinois Constitution addresses the procedure for judicial retention elections:

> "Not less than six months before the general election preceding the expiration of his term of office, a Supreme, Appellate or Circuit Judge who has been elected to that office may file in the office of the Secretary of State a declaration of candidacy to succeed himself. The Secretary of State, not less than 63 days before the election, shall certify the Judge's candidacy to the proper election officials. The names of Judges seeking retention shall be submitted to the electors, separately and without party designation, on the sole question whether each Judge shall be retained in office for another term. The retention elections shall be conducted at general elections in the appropriate Judicial District, for Supreme and Appellate Judges, and in the circuit for Circuit Judges. The affirmative vote of three-fifths of the electors voting on the question shall elect the Judge to the office for a term commencing on the first Monday in December following his election." Ill. Const. 1970, art. VI, §12(d).

In 1977, the legislature enacted its own provision addressing the same subject. Section 7A–1 of the Election Code provides as follows:

> "Any Supreme, Appellate or Circuit Judge who has been elected to that office and who seeks to be retained in that office under subsection (d) of Section 12 of Article VI of the Constitution shall file a declaration of candidacy to succeed himself in the office of the Secretary of State on or before the first Monday in December before the general election preceding the expiration of his term of office. Within 3 business days thereafter, the Secretary of State shall certify to the State Board of Elections the names of all incumbent judges who were eligible to stand for retention at the next general election but failed to timely file a declaration of candidacy to succeed themselves in office or, having timely filed such a declaration,

˘6˘

withdrew it. The State Board of Elections may rely upon the certification from the Secretary of State (a) to determine when vacancies in judicial office exist and (b) to determine the judicial positions for which elections will be held. The Secretary of State, not less than 63 days before the election, shall certify the Judge's candidacy to the proper election officials. The names of Judges seeking retention shall be submitted to the electors, separately and without party designation, on the sole question whether each Judge shall be retained in office for another term. The retention elections shall be conducted at general elections in the appropriate Judicial District, for Supreme and Appellate Judges, and in the circuit for Circuit Judges. The affirmative vote of three-fifths of the electors voting on the question shall elect the Judge to the office for a term commencing on the first Monday in December following his election." 10 ILCS 5/7A–1 (West 2004).

Section 7A–1 was added by Public Act 80–1057 (Pub. Act 80–1057, eff. November 23, 1977). Public Act 80–1057 began as House Bill 585. During the Senate debates on House Bill 585, the bill's Senate sponsor, Senator Knuppel, explained that the bill was designed to address the problem of judges who waited until after the primary election was over to decide that they were not running for retention. 80th Ill. Gen. Assem., Senate Proceedings, June 26, 1977, at 194 (statements of Senator Knuppel). In that situation, the supreme court would appoint someone to fill the vacancy, and that person would hold the seat until the next election, two years later. When another senator raised the language of article VI, section 12(d), of the constitution, Senator Knuppel responded:

"This is the language as you've pointed out, of the Constitution. However, in commenting on that Judge Roy O. Gully says this language seems to indicate that a judge has until the first Tuesday in May. However, the practice is a bad one as is now exercised and since it only seems to be constitutionally prohibited, I think this is good legislation and we should attempt it." 80th Ill. Gen. Assem., Senate Proceedings, June 28, 1977, at

395 (statements of Senator Knuppel).

After the bill was passed, Senator Berning stated for the record that the Senate had "established an interesting precedent. Violating absolutely the word of the Constitution." 80th Ill. Gen. Assem., Senate Proceedings, June 28, 1977, at 396 (statements of Senator Berning).

Then-Governor James R. Thompson vetoed the bill and sent a letter to the General Assembly explaining his vote. Governor Thompson explained that a statute setting a deadline for judges to file for retention by the first Monday in December preceding the election would be in express conflict with article VI, section 12(d), of the constitution, which gives judges until six months before the election to decide whether to run for retention. Governor Thompson recognized the legislature's intent in enacting section 7A–1, but found it irrelevant in light of the express language of the constitution:

> "Clearly, the sponsor's intent is to ensure that where an incumbent does not file for retention, persons who may wish to become candidates for the seat may file for nomination in the primary election. However, a judge who did not, according to the provision of this bill, file for retention by the first Monday in December, but decided at some later point to stand for retention while still within the time frame enunciated in the Constitution, would be totally within his right. A statute cannot attempt to take away a right so unequivocally mandated by the Constitution."

The Senate overrode the Governor's veto and enacted section 7A–1. Senator Knuppel acknowledged that the legislation might "create a court case" to determine its validity. 80th Ill. Gen. Assem., Senate Proceedings, November 22, 1977, at 37 (statements of Senator Knuppel). Twenty-nine years later, that day has arrived.

Before reaching the constitutional issue, this court must address plaintiffs' argument that the deadline set forth in section 7A–1 is directory rather than mandatory. Courts consider the constitutionality of statutes only when necessary to decide the case. *Vuagniaux v. Department of Professional*

*Regulation*, 208 Ill. 2d 173, 184 (2003). Plaintiffs contend that, if this court properly construes the time limit in section 7A–1 as merely directory, then it can affirm the circuit court's decision without reaching the constitutional questions. According to plaintiffs, the deadline set forth in section 7A–1 must be read as directory because that section does not specify a penalty for a judge's failure to comply. Moreover, plaintiffs note that, as their declarations were filed shortly after the deadline and before the time for other candidates to file for the vacancies, no one would have been prejudiced if the Secretary of State had certified their candidacies.

This court recently noted that the mandatory-directory dichotomy "concerns the consequences of a failure to fulfill an obligation." *People v. Robinson*, 217 Ill. 2d 43, 52 (2005). In other words, the question is whether " 'the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates.' " *Robinson*, 217 Ill. 2d at 51-52, quoting *Morris v. County of Marin*, 18 Cal. 3d 901, 908, 559 P.2d 606, 610-11, 136 Cal. Rptr. 251, 255-56 (1977). A strong indication that the legislature intended a provision to be mandatory is if the statute prescribes a consequence for failing to obey the statutory provision. *Robinson*, 217 Ill. 2d at 54. In the election context this court has stated that " '[w]hether a statute is mandatory or directory does not depend upon its form but upon the legislative intention to be ascertained from a consideration of the entire act, its nature, its object, and the consequences which would result from construing it one way or the other.' " *People ex rel. Meyer v. Kerner*, 35 Ill. 2d 33, 39 (1966), quoting *People ex rel. Agnew v. Graham*, 267 Ill. 426, 436 (1915). Whether a statute is mandatory or directory is an issue of law that is reviewed *de novo*. *Robinson*, 217 Ill. 2d at 54.

The circuit court correctly determined that the filing deadline in section 7A–1 is mandatory. That section clearly prescribes a consequence for a judge's failure to meet the deadline:

> "Within 3 business days [of the deadline], the Secretary of State shall certify to the State Board of Elections the names of all incumbent judges who were eligible to stand for retention at the next general election but failed

to timely file a declaration of candidacy to succeed themselves in office or, having timely filed such a declaration, withdrew it. The State Board of Elections may rely upon the certification from the Secretary of State (a) to determine when vacancies in judicial office exist and (b) to determine the judicial positions for which elections will be held." 10 ILCS 5/7A–1 (West 2004).

Plaintiffs rely on several cases in which provisions of the Election Code were held to be directory rather than mandatory. *Kerner*, 35 Ill. 2d 33; *People ex rel. Harris v. Powell*, 35 Ill. 2d 384 (1966); *People ex rel. Bell v. Powell*, 35 Ill. 2d 381 (1966); *McNamara v. Oak Lawn Municipal Officers Electoral Board*, 356 Ill. App. 3d 961 (2005); *Courtney v. County Officers Electoral Board*, 314 Ill. App. 3d 870 (2000); *Ballentine v. Bardwell*, 132 Ill. App. 3d 1033 (1985). As defendants point out, however, the statutory provisions at issue in these cases did not provide penalties for failure to comply. By contrast, when an Election Code provision specifies the consequences of noncompliance, the provision has been held to be mandatory. See, *e.g.*, *Marquez v. Aurora Board of Election Commissioners*, 357 Ill. App. 3d 187 (2005); *Purnell v. Municipal Officers Electoral Board*, 275 Ill. App. 3d 1038 (1995); *Simmons v. DuBose*, 142 Ill. App. 3d 1077 (1986). Section 7A–1 clearly specifies the consequences of a judge's failure to comply with the deadline, and thus it must be given a mandatory reading.

The next issue is whether this mandatory deadline is constitutional. Statutes are presumed to be constitutional, and the burden of rebutting that presumption is on the party challenging the validity of the statute. *Illinois State Chamber of Commerce v. Filan*, 216 Ill. 2d 653, 661 (2005). Additionally, this court has a duty to uphold the constitutionality of a statute when reasonably possible. *City of Chicago v. Morales*, 177 Ill. 2d 440, 448 (1997). The constitutionality of a statute is a question of law that is reviewed *de novo*. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 290 (2003).

The thrust of defendants' argument is that section 7A–1 is not unconstitutional because article VI, section 12(d), of the constitution reasonably may be interpreted two different ways.

˘10˘

Thus, according to defendants, this constitutional provision is ambiguous and this court must look to interpretive aids to determine its meaning. Defendants acknowledge that the first sentence of section 12(d) can be read as establishing a deadline by which judges must file their retention declarations. However, defendants assert that it is equally reasonable to construe this passage as merely establishing a constitutional floor–the date after which an incumbent judge may not file a retention declaration–but not as limiting the authority of the General Assembly to set another deadline for those declarations, as long as that deadline is not less than six months before the general election. Here, the legislature set a deadline of the first Monday in the December preceding the general election, which is 11 months prior to the general election. Because this is not less than six months before the general election, defendants assert that the statute comports with the constitution.

The first sentence of section 12(d) is not ambiguous. Rather, it means exactly what it says: "Not less than six months before the general election preceding the expiration of his term of office, a Supreme, Appellate or Circuit Judge who has been elected to that office may file in the office of the Secretary of State a declaration of candidacy to succeed himself." Ill. Const. 1970, art. VI, §12(d). If the judge does so, "[t]he Secretary of State, not less than 63 days before the election, shall certify the Judge's candidacy to the proper election officials." Ill. Const. 1970, art. VI, §12(d). This section clearly and unambiguously sets a deadline for retention declarations of six months before the general election. Plaintiffs met this deadline, and the constitution requires the Secretary of State to certify their candidacies to the proper election officials.

Defendants are incorrect in suggesting that they have offered an equally reasonable construction of the constitution. Defendants interpret the first sentence of section 12(d) as if it read "the *General Assembly* may set a deadline for a Supreme, Appellate or Circuit judge to file in the office of Secretary of State a declaration of candidacy to succeed himself, and this deadline must be not less than six months before the general election." This is obviously not what the provision says. The

first sentence of section 12(d) is directed at *the judge*, not the General Assembly, and it gives *the judge* the right to file his or her declaration not less than six months before the general election. Section 7A–1, which provides a different deadline, is in direct conflict with this provision and is therefore unconstitutional.

Because we find that article VI, section 12(d), is not ambiguous, we need not consider the interpretive aids on which defendants rely. We note briefly, however, that none of these matters help defendants' argument. Defendants rely on the broad authority to regulate elections granted to the General Assembly in articles III and VI of the constitution. Defendants are correct that the constitution grants the General Assembly a significant role in the election process. This is irrelevant to the matter at hand, however, because the constitution sets forth very specific requirements for the retention process, and the General Assembly cannot enact legislation that conflicts with specific provisions of the constitution, unless the constitution specifically grants the legislature that authority. See, *e.g., Thies v. State Board of Elections*, 124 Ill. 2d 317, 325-26 (1988) (where constitution sets forth qualifications for office, legislature cannot change or add to those qualifications unless the constitution gives it that power). There is no provision in the constitution giving the legislature the authority to change the retention requirements established by the constitution.

Defendants further rely on the history and debates of the Constitutional Convention. Defendants note that the question of whether judges would be appointed or elected was submitted to the voters as a constitutional referendum. The people voted for the election of judges, and the framers adopted a system in which judges would be nominated at primary elections or by petitions, elected at the general election, and subjected to retention votes thereafter. According to defendants, this shows that the framers intended for a broad application of the franchise to judicial elections and that judges should be elected by the people whenever possible. When an eligible judge waits until after the primary and then does not file a retention declaration, however, the vacancy would be filled by appointment and the unelected judge could hold the seat

until the next election, a period of two years. In this situation, defendants contend that the people's right to select judges–a right granted by the constitution–will have been undermined.

The problem with this argument is that, these broad policy goals notwithstanding, article VI, section 12(d), of the constitution sets forth very specific requirements for retention elections, including a deadline for judges to file their retention declarations, and this election scheme was ratified by the people. Moreover, the people do *not* lose their right to fill the judicial office in question. An appointment to fill a vacancy is merely temporary. Finally, the framers clearly contemplated the situation in which a vacancy is filled by appointment for two years. Article VI, §12(c), provides, in part, that "[a] person appointed to fill a vacancy less than 60 days prior to the next primary election to nominate Judges shall serve until the vacancy is filled at the second general or judicial election following such appointment." It is difficult to see how the constitution can be undermined by itself.

Defendants also rely on the legislative intent behind section 7A–1. Defendants cite portions of the Senate debates on House Bill 585 to show that the legislature wanted to ensure the constitutional mandate of elected judges by moving up the deadline for retention declarations. This would ensure that the electorate filled vacant judgeships immediately, rather than having to wait until two-year supreme court appointments had run their course. Defendants assert that this was a valid exercise of the General Assembly's power under articles III and VI to provide by law for the filling of judicial vacancies as well as an exercise of its power to establish the manner of judicial elections. The problem with this argument is that the General Assembly enacted legislation that directly conflicted with the constitution. Moreover, the legislative debates cited by defendants show that the legislators knew that there was a constitutional problem and that they were likely creating a court case.

Defendants further contend that their interpretation is supported by the change in language from the 1870 Constitution, as amended by the Judicial Article of 1964, and the 1970 Constitution. The 1870 Constitution, as amended by

the Judicial Article of 1964, also required a judge to file a declaration of candidacy to succeed himself or herself "[n]ot less than six months prior to the general election next preceding the expiration of his term of office." Ill. Const. 1870, art. VI (1964) §11. However, it further provided that "[a]ny judge who does not file a declaration *within the time herein specified*, or, having filed, fails of reelection, shall vacate his office at the expiration of his term." (Emphasis added.) Ill. Const. 1870, art. VI (1964), §11. Defendants argue that it was this latter clause that gave judges the absolute right to wait until six months before the election to file their retention declarations, and the deletion of this language in the 1970 Constitution evinces an intent to remove that right and make retention subject to further time restrictions as the General Assembly may provide by law. With all due respect to defendants, it was not this latter clause that gave judges the right to file not less than six months before the general election, but rather the clause that provided that "[n]ot less than six months prior to the general election next preceding the expiration of his term of office, any judge previously elected may file in the office of the Secretary of State a declaration of candidacy to succeed himself." Ill. Const. 1870, art. VI (1964), §11. This language, and the right it confers, was retained in the 1970 Constitution. The circuit court correctly found that the change in language was merely a stylistic change, not affecting substance. It appears that this language was just removed as unnecessary. Section 12(b) of article VI provides that "[t]he office of a Judge shall be vacant upon his death, resignation, retirement, removal, *or upon the conclusion of his term without retention in office*." (Emphasis added.) Ill. Const. 1970, art. VI, §12(b). A judge who either is not retained or is not eligible for retention because he or she fails to file his or her declaration of candidacy on time will conclude his or her term in office without retention and his or her office will be vacant. Thus, the language that was deleted was unnecessary surplusage.

In sum, article VI, section 12(d), of the Illinois Constitution is not ambiguous. It plainly provides that judges have the right to file retention declarations not less than six months before the general election preceding the expiration of their terms in

office. Section 7A–1 of the Election Code, which attempts to change this deadline, is facially unconstitutional. Our determination that section 7A–1 is unconstitutional on this basis renders unnecessary a discussion of plaintiffs' separation of powers argument.

The judgment of the circuit court of Cook County is affirmed. Additionally, because the judicial offices in question are not vacant, it is hereby ordered that defendants Cook County clerk and Chicago board of election commissioners shall neither tally any votes in the March 2006 primary election for these offices nor certify any results of the March 2006 primary election for these offices.

*Affirmed.*