Docket No. 102225.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. AARON JAMAR HOUSTON, Appellant.

*Opinion filed August 2, 2007.*

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Fitzgerald, Kilbride, Garman, and Burke concurred in the judgment and opinion.

Justice Karmeier dissented, with opinion.

## OPINION

After a jury trial in the circuit court of Peoria County, defendant Aaron Jamar Houston was convicted of the offense of armed robbery (720 ILCS 5/18–2(a) (West 2000)). The circuit court imposed a sentence of 20 years' imprisonment. The appellate court affirmed his conviction and sentence in all respects. 363 Ill. App. 3d 567. We granted leave to appeal. 210 Ill. 2d R. 315. For the reasons set forth below, we remand the cause to the circuit court with directions.

## BACKGROUND

The charges against defendant arose from an armed robbery of a restaurant on July 11, 2002. The case was tried before a jury. Before trial began, the court inquired of the State and defense counsel as to their preferences regarding recording of the *voir dire* of the jury:

> "[THE COURT:] Counsel, what do you want to do relative to having a court reporter take the actual voir dire; do you wish to have it recorded or not?
>
> [Defense Counsel:] I don't need it recorded.
>
> [State:] No, People waive.
>
> THE COURT: Then the court reporter will be waived for the actual taking of the voir dire. [To the court reporter:] When I read the list of witnesses and put the 12 in the box, then you're free to go.
>
> [Defense Counsel:] Judge, subject to coming up–
>
> THE COURT: That's right, she'll be available."

*Voir dire* commenced without being recorded by the court reporter. The court went back on the record after the 12 jurors had been picked to indicate that at that point there was only one prospective juror remaining as a possible alternate. The court stated that it was too late in the day to request additional prospective jurors, so either the parties could agree to go to trial with a single alternate juror if the final prospective juror was acceptable, or return the following day, pick two alternate jurors and proceed at that point. Defense counsel and the State each indicated that it would be acceptable to go to trial with a single alternate juror. After confirming that this was acceptable to both parties, the court stated: "Okay. And I take it you continue your waiving of the court reporter for the voir dire for the alternate?" Defense counsel and the State each assented, and the court reporter was again excused. The alternate was apparently deemed acceptable, and the case proceeded to trial.

At the close of evidence, the jury found defendant guilty of armed robbery. The trial court then set June 13, 2003, as the date for posttrial motions and sentencing. On April 24, 2003, defendant sent the court a handwritten *pro se* motion for a new trial, which the court received on April 28. In addition to pointing out alleged inconsistencies in the testimony that formed the basis of his

-2-

conviction, defendant also complained regarding the composition of his jury. Specifically, defendant, who is African-American, wrote to the judge as follows:

> "I know you tried to be fair as possible and you was but I felt a predjudice [*sic*] and discrimanating [*sic*] patter[n] going on with the jury. I'm not predjudice [*sic*] but I strong feel some of the jury was. I mean let's look at it eleven white people and one black person ***."

Defendant further alleged, in his *pro se* motion, that the lone African-American juror, a woman, stated during *voir dire* that she did not know defendant, but that defendant subsequently learned that this juror did in fact know him. Defendant alleged, in addition, that the prosecution wanted this person on the jury because her brother had recently been murdered. In defendant's view, she had strong feelings "about guns and people being shot."

On May 14, 2003, defense counsel filed a motion for a new trial. In this motion, defense counsel stated, in relevant part: "That of the twelve jurors in this cause, there was only one black and when the court asked said black lady *** if she knew anyone, either the attorneys or any of the proposed witnesses or the Defendant[,] she stated she did not know the Defendant[,] but in reality said Defendant has subsequently learned that said black lady did know him."

On June 13, 2003, the trial court held the previously scheduled hearing on the motion for a new trial. During this hearing, defense counsel emphasized, in particular, the allegation regarding the African-American juror "who denied, in effect, that she knew anyone, any of the parties, the Court, or anyone else." The State responded that defendant never made this objection during *voir dire*. The State added that "there were several peremptory challenges used, at least seven by the defense; I think six by the State."

The trial court denied the motion for a new trial. In explaining this decision, the trial court specifically addressed the claim regarding the African-American juror who allegedly denied knowing defendant. The trial court ruled that there was no factual basis for this claim.

After denying the motion for a new trial, the court conducted a sentencing hearing. During this hearing, the State acknowledged that, according to the evidence presented at trial, defendant "was not the

individual that was armed." The presentence investigation report indicated that defendant, who was born on November 15, 1984, left high school in 1999 when he was about 15 years of age. At the conclusion of the hearing, the trial court sentenced defendant to 20 years' imprisonment.

Defendant appealed, and a divided appellate court affirmed his conviction and sentence. 363 Ill. App. 3d 567. The court found that the evidence was sufficient to uphold defendant's conviction, found no reversible error in the fact that the *voir dire* was not recorded, and denied defendant's claim of ineffective assistance of counsel.

In her dissent, Justice McDade pointed to Supreme Court Rule 608(a)(9), which requires that "court reporting personnel *** take the record of the proceedings regarding the selection of the jury." 210 Ill. 2d R. 608(a)(9). Justice McDade noted that the failure to record *voir dire* in the case at bar ran directly counter to Rule 608(a)(9), which, in Justice McDade's view, was mandatory. She stated: "This is a rule of criminal procedure and, as is the case with all the supreme court's rules that fall into that category, it is mandatory; it is *a rule* of procedure, not a mere suggestion." (Emphasis in original.) 363 Ill. App. 3d at 579 (McDade, J., dissenting). According to Justice McDade, the cause should have been remanded for a new trial.


ANALYSIS

Before this court, defendant raises two distinct challenges to his conviction. The first concerns the *voir dire* proceedings. The second relates to trial counsel's failure to submit a jury instruction. With regard to the *voir dire* proceedings, defendant contends that (1) his trial counsel was ineffective for waiving the court reporter during *voir dire*, and (2) the trial court improperly allowed *voir dire* to proceed with no court reporter present, thereby depriving defendant of due process.

We turn first to defendant's assertions of error during *voir dire*. Both of his arguments in this regard concern the failure to record proceedings in violation of Rule 608 (210 Ill. 2d R. 608).

Preliminarily, we note that article VI of our supreme court rules governs criminal cases, and within article VI, Rule 608 deals with the record on appeal. Subsection (a)(9) of Rule 608, which focuses on

*voir dire*, provides that, in cases where a sentence of death is not imposed:

> "[T]he court reporting personnel *** *shall* take the record of the proceedings regarding the selection of the jury, but the record need not be transcribed unless a party designates that such proceedings be included in the record on appeal." (Emphasis added.) 210 Ill. 2d R. 608(a)(9).[1]

Rule 608 does not define the terms "record" and "transcribe." Webster's Third New International Dictionary defines "record" as "an account in writing or print *** intended to perpetuate a knowledge of acts or events" and, more specifically, "an official contemporaneous memorandum stating the proceedings of a court of justice." Webster's Third New International Dictionary 1898 (2002). The term "transcribe" is defined as "to make a written copy of." Webster's Third New International Dictionary 2426 (2002). While Black's Law Dictionary appears to conflate the terms "record" and "transcript" (Black's Law Dictionary 1279 (7th ed. 1999) (defining "record" as including a "transcript of the trial or hearing")), the sense of Rule 608(a)(9) clearly is that "record," as in "take the record of the proceedings regarding the selection of the jury," is to be differentiated from a transcription. The rule states: "the record [of the proceedings regarding the selection of the jury] need not be transcribed unless a party designates that such proceedings be included in the record on appeal." 210 Ill. 2d R. 608(a)(9). The plain meaning of the rule is that, in cases other than those where a sentence of death is imposed, a record of the proceedings regarding the selection of the jury is to be taken but that a transcription, or copy, need not be made unless

---

[1]Prior to 1986, subsection (9) of paragraph (a) provided only that the "judgment and sentence" in a criminal case were among the items to be included in the record on appeal. 87 Ill. 2d R. 608(a)(9). Paragraph (a) was amended in 1986. As amended, subsection (9) required, among other things, that court reporters in cases where a sentence of death was not imposed were "to take notes of the jury-selection proceedings, but the transcription of such notes [was] required only when requested by a party." 210 Ill. 2d R. 608, Committee Comments, at cclxvii. Though subsection (a)(9) has undergone minor modifications since then, it has remained essentially unchanged.

requested by a party for inclusion in the record on appeal. Of necessity, if the *voir dire* record that Rule 608(a)(9) requires to be taken must be transcribed, if requested, for inclusion in the record on appeal, this initial record must be complete enough to be so transcribed and included. Our construction of Rule 608(a)(9) is in accord with the previous version of the rule, which stated, in pertinent part: "the court reporter shall take *full stenographic notes* of the proceedings regarding the selection of the jury, but the *notes* need not be transcribed unless a party designates that such proceedings be included in the record on appeal." (Emphases added.) 177 Ill. 2d R. 608(a)(9).

This court has never dealt expressly with Rule 608(a)(9). However, *People v. Thompkins*, 121 Ill. 2d 401 (1988), a case which was cited to us by the State, has been relied upon by our appellate court in determining whether the failure to ensure the recording of *voir dire*, in violation of Rule 608(a)(9), constituted ineffective assistance of counsel. *People v. Ash*, 346 Ill. App. 3d 809 (2004); *People v. Morris*, 229 Ill. App. 3d 144 (1992). In *Thompkins*, we rejected the defendant's claim that his counsel was *per se* ineffective for failure to insist upon the presence of a court reporter during *voir dire*. Citing *People v. Steel*, 52 Ill. 2d 442, 452 (1972), we concluded that "the mere failure to obtain the presence of a court reporter during *voir dire* does not constitute a *per se* presumption of ineffectiveness of counsel." *Thompkins*, 121 Ill. 2d at 448. In reaching this decision, we noted that the criteria for determining incompetency of counsel are "strict." *Thompkins*, 121 Ill. 2d at 447. We explained that, under *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), a defendant arguing ineffective assistance must show not only that his counsel's performance was deficient but that the defendant suffered prejudice as a result. In support of his ineffective-assistance claim, the defendant in *Thompkins* pointed to *United States v. Cronic*, 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984), which discussed, among other things, "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658, 80 L. Ed. 2d 667, 104 S. Ct. at 2046. *Thompkins* concluded that the defendant's reliance on *Cronic* was "in error." *Thompkins*, 121 Ill. 2d at 448. The court explained: "[T]he failure to insist upon the presence of the court

reporter during a portion of the *voir dire* proceedings is not such an extreme and limited circumstance, such as the total absence of counsel, where prejudice can be presumed." *Thompkins*, 121 Ill. 2d at 448.

This same principle–that prejudice may not be presumed from the mere failure to ensure the recording of *voir dire*–is reflected in *People v. Ash*, 346 Ill. App. 3d 809 (2004), and *People v. Morris*, 229 Ill. App. 3d 144 (1992). In *Ash* and *Morris*, also cited to us by the State, our appellate court followed *Thompkins* and concluded that the failure to ensure the reporting of *voir dire*, in violation of Rule 608(a)(9), was not, in and of itself, ineffective assistance. *Ash*, 346 Ill. App. 3d at 813; *Morris*, 229 Ill. App. 3d at 157. We agree with the holdings in *Thompkins*, *Morris* and *Ash*–and in *Steel*, also cited to us by the State–that a waiver of the court reporter for *voir dire* is not *per se* ineffective assistance of counsel, and we hereby reaffirm this principle.

In the case at bar, defendant, citing to *Strickland*, argues ineffective assistance based on his counsel's waiver of the court reporter during *voir dire*. Unlike the defendant in *Thompkins*, defendant here does not argue that prejudice should be presumed. Indeed, defendant in the instant case does not cite to *Cronic*, which held that prejudice could be presumed in some instances, such as the total absence of counsel.

Under the two-prong *Strickland* test for determining whether assistance of counsel has been ineffective, a defendant must show that (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defendant in that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *People v. Evans*, 209 Ill. 2d 194, 219-20 (2004); *People v. Peeples*, 205 Ill. 2d 480, 512-13 (2002). In demonstrating, under the first *Strickland* prong, that his counsel's performance was deficient, a defendant must overcome a strong presumption that, under the circumstances, counsel's conduct might be considered sound trial strategy. *Peeples*, 205 Ill. 2d at 512. With regard to the second prong of *Strickland*–the prejudice prong–a reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome. *Evans*,

209 Ill. 2d at 220; *Peeples*, 205 Ill. 2d at 513. In order to prevail on a claim of ineffective assistance, a defendant must satisfy both the performance and the prejudice prongs of *Strickland*. *Evans*, 209 Ill. 2d at 220.

As previously noted, defendant's trial counsel twice waived the presence of the court reporter during *voir dire*: first, when the court asked (before the start of trial) if counsel wanted a court reporter present and counsel answered that none was needed; and second, when the court asked the same question (later the same day) regarding *voir dire* of the alternate juror and counsel repeated his waiver of the court reporter.

The result of this waiver was that, contrary to the dictates of Rule 608(a)(9), no record was made of what occurred during jury selection. In the case at bar, this lack of a *voir dire* record is consequential. As previously indicated, defendant complained in his *pro se* motion for a new trial about the composition of his jury.[2] In that motion, after noting that there were 11 white persons but only one African-American person on the jury, defendant stated: "I felt a predjudice [*sic*] and discrimanating [*sic*] patter[n] going on with the jury." This language echoes language in *Batson v. Kentucky*, 476 U.S. 79, 97, 90 L. Ed. 2d 69, 88, 106 S. Ct. 1712, 1723 (1986), which held that it was a violation of the equal protection clause for the prosecution to use a peremptory challenge to exclude a prospective juror solely on the basis of race. Though defendant's *pro se* motion made no mention of *Batson*,[3] his complaint about the racial composition of his jury was a

---

[2]Defendant also alleged that the lone African-American juror, a woman, stated during *voir dire* that she did not know defendant, but defendant subsequently learned that she did in fact know him. This allegation of personal acquaintance is separate and distinct from defendant's claim of racial discrimination in jury selection. We agree with the trial court that there was no factual basis in the record for defendant's personal-acquaintance allegation, which plays no part in our decision in the case at bar.

[3]Defense counsel's motion for a new trial also made no mention of *Batson*. This is not surprising, given that, as a result of counsel's waiver of the court reporter for *voir dire*, there was no record of the proceedings

*Batson* claim.[4] It would be manifestly unfair to require precise legal reasoning, including citation to authority, in a *pro se* claim drafted, as was the instant claim, by an 18-year-old defendant who lacked even a high school diploma. See, *e.g.*, *People v. Smith*, 268 Ill. App. 3d 574, 580 (1994) (*pro se* postconviction petitions are given more liberal reading than are formal pleadings prepared by counsel).

The difficulty here is that, having raised–or attempted to raise–a *Batson* claim, defendant had no *voir dire* record with which to support it. According to defendant, the lack of a *voir dire* record made it virtually impossible for him to pursue his *Batson* claim on appeal. In defendant's view, "it would not be possible for appellate counsel, or the appellate court, to assess a *Batson* issue without a full recording of the entire *voir dire* proceedings." Defendant asserts that his counsel's waiver of the court reporter for *voir dire* satisfies both prongs of the *Strickland* test.

Faced with the unusual factual background of this case, we attempt to determine whether trial counsel's performance constituted ineffective assistance. We look first to whether this conduct fell below an objective standard of reasonableness. As noted, this court's rules provide that "the court reporting personnel *** *shall* take the record of the proceedings regarding the selection of the jury." (Emphasis added.) 210 Ill. 2d R. 608(a)(9). Counsel's waiving of the court reporter in the case at bar ran directly counter to Rule 608(a)(9),

---

regarding jury selection. Had counsel asserted a *Batson* claim in his motion for a new trial, he would ultimately have had to argue his own ineffective assistance in order to explain the complete lack of a *voir dire* record with which to support the claim. In view of this situation, it might have been advisable for the trial court to appoint different counsel to represent defendant in his posttrial motion. See *People v. Moore*, 207 Ill. 2d 68 (2003); *People v. Krankel*, 102 Ill. 2d 181 (1984). Defendant's trial took place over two days in mid-April 2003, and the hearing on defendant's motion for a new trial was held on June 13, 2003. Had different counsel been appointed to represent defendant in his posttrial motion, it likely would have been a fairly simple matter to reconstruct the record of *voir dire* at that time, only two months after trial.

[4]In its brief to this court, the State does not dispute that defendant's complaint about the racial composition of his jury was a *Batson* claim.

which was promulgated precisely to avoid the type of situation we now face. Here, on appeal, defendant's appellate counsel expressly refers to the *Batson* claim initially raised by defendant at the trial level. Appellate counsel cannot pursue this claim on appeal, however, because of trial counsel's failure to comply with our Rule 608(a)(9).

An examination of the procedure used in assessing *Batson* claims illustrates the difficulties resulting from trial counsel's waiver of the court reporter. *Batson* established a three-step process for evaluating alleged discrimination in jury selection:

> "First, the defendant must make a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race. [Citation.] Second, once such a showing has been made, the burden shifts to the State to provide a race-neutral explanation for excluding each of the venirepersons in question. [Citation.] Defense counsel may rebut the proffered explanations as pretextual. [Citation.] Finally, the trial court determines whether the defendant has met his burden of demonstrating purposeful discrimination." *People v. Williams*, 209 Ill. 2d 227, 244 (2004).

At the first stage, where the defendant is required to make a *prima facie* showing of discrimination, courts are to consider "all relevant circumstances" in deciding whether such a case has been established. *Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723. This court has held that the following are among the relevant factors to be considered in determining whether the defendant has demonstrated purposeful discrimination against African-Americans:[5]

> "(1) racial identity between the defendant and the excluded venirepersons; (2) a pattern of strikes against African-American venirepersons; (3) a disproportionate use of peremptory challenges against African-American venirepersons; (4) the level of African-American representation in the venire as compared to the jury; (5) the

---

[5]While *Batson* and much of its progeny deal with discrimination based on race, *Batson* has been extended to bar "discrimination in jury selection on the basis of gender." *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 146, 128 L. Ed. 2d 89, 107, 114 S. Ct. 1419, 1430 (1994).

-10-

prosecutor's questions and statements during *voir dire* examination and while exercising peremptory challenges; (6) whether the excluded African-American venirepersons were a heterogeneous group sharing race as their only common characteristic; and (7) the race of the defendant, victim, and witnesses." *People v. Williams*, 173 Ill. 2d 48, 71 (1996). Consideration of several of these factors, particularly the second, third, fifth and sixth, would be difficult if not impossible without a record of the *voir dire* proceedings.

In such circumstances, a defendant–such as defendant here–faces serious obstacles in establishing a *prima facie* case of discrimination at the posttrial stage. It follows that, without a record of the proceedings during jury selection, the defendant would encounter the same, or greater, obstacles in pursuing a *Batson* claim on appeal. The appellate court would find it just as difficult as the trial court to review such a claim. For these reasons, counsel's waiver of the court reporter in the case at bar falls below an objective standard of reasonableness. We can conceive of no possible strategic advantage that might have been gained by waiving the court reporter for *voir dire*. Defendant has satisfied the performance prong of the *Strickland* test by showing that his counsel's performance was deficient.

Having concluded that counsel's performance was professionally deficient, we turn to the question of whether this conduct resulted in prejudice to defendant. Under *Strickland*, a defendant establishes prejudice by showing that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Peeples*, 205 Ill. 2d at 513; *Evans*, 209 Ill. 2d at 219-20.

In the case at bar, we cannot say that, as a result of counsel's error, there is a reasonable probability that the result would have been different. We cannot say this because, without a *voir dire* record–the absence of which is directly attributable to counsel's deficient performance–we have no way of determining the extent to which defendant was prejudiced. Nevertheless, given the seriousness of defendant's claim of racial discrimination in jury selection, we are reluctant simply to deny defendant all relief based solely on our inability, because of the lack of a *voir dire* record, to determine the

-11-

extent of the prejudice suffered by defendant. In our view, a middle course is preferable.

In *Simmons v. Beyer*, 44 F.3d 1160 (3d Cir. 1995), as a result of the delay between the defendant's conviction and his direct appeal in state court, portions of the trial record, "including a lengthy *in camera* voir dire of prospective jurors," were missing. *Simmons*, 44 F.3d at 1164. Faced with this situation, the state appellate court "remanded the case for the limited purpose of reconstructing the record, and the judges who had presided over the jury selection and the remainder of the trial and sentencing held reconstruction hearings." *Simmons*, 44 F.3d at 1164.[6] Similarly, in *In re Taylor*, 272 Wis. 2d 642, 679 N.W.2d 893 (App. 2004), also a *Batson* case, the proceedings on *voir dire* were not recorded. On remand, the trial court in *Taylor* held a hearing "at which the *voir dire* process was 'reconstructed' from testimony of the assistant district attorney and defense counsel, handwritten notes, and a jury panel roster." *Taylor*, 272 Wis. 2d at 648, 679 N.W.2d at 896.

Finally, in *People v. Hudson*, 195 Ill. 2d 117 (2001), this court remanded a *Batson* gender-discrimination case to the circuit court for a hearing to determine if the defendant, who had failed to raise the gender-discrimination claim in his direct appeal, had shown the necessary prejudice to excuse his procedural default. The defendant in *Hudson*, who was initially sentenced to death, had raised a *Batson* race-discrimination claim at the trial level and on direct appeal, but this claim was rejected. While the defendant's petition for *certiorari* was pending before the United States Supreme Court, that court decided *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 128 L. Ed. 2d

---

[6]The defendant's conviction and sentence were subsequently affirmed on direct appeal in state court, and his petition for *habeas corpus* relief was denied by the federal district court. The defendant appealed, and the court of appeals concluded that the defendant's *Batson* claim of discrimination in jury selection could not be reviewed effectively "without a transcript of the voir dire to allow the reviewing court to examine whom the assistant prosecutor excluded and why." *Simmons*, 44 F.3d at 1168. The court emphasized "the seriousness" of the *Batson* claim, and remanded for the granting of *habeas* relief unless the State agreed to retry the defendant before a properly selected jury. *Simmons*, 44 F.3d at 1167-68, 1171.

89, 114 S. Ct. 1419 (1994), which extended *Batson* to prohibit gender discrimination in jury selection. The defendant in *Hudson* filed a postconviction petition in which he claimed, relying on *J.E.B.*, that a female African-American venireperson who had been struck by the State had been excluded on the basis of gender.[7] Because the defendant had failed to raise this gender-discrimination claim in his direct appeal, this court conducted a cause-and-prejudice analysis to determine if the defendant's forfeiture of the claim would be excused. We concluded that the defendant had shown cognizable cause for his failure to raise the claim earlier. However, we also concluded that "an evidentiary hearing [was] needed in order to determine if defendant ha[d] established the needed prejudice to excuse the procedural default." *Hudson*, 195 Ill. 2d at 127. We stated: "without findings from such a hearing, it is impossible to determine whether defendant has established the requisite prejudice." *Hudson*, 195 Ill. 2d at 137. We therefore remanded the cause to the circuit court for a hearing to determine if the State would have struck the African-American female "even in the absence of any gender-related reasons." *Hudson*, 195 Ill. 2d at 136-37. We noted that, if the hearing demonstrated that the State would have struck the venireperson even in the absence of the gender-related reason, the defendant could not be said to have established prejudice and his claim should be denied. If, on the other hand, the State was unable to prove this proposition, the defendant would have met his burden of showing prejudice and relief should be granted.

The appropriate solution in the case at bar, similar to *Simmons*, *Taylor* and *Hudson*, is to remand this cause to the circuit court for a hearing to reconstruct the *voir dire* record. We adopt this course, rather than simply denying defendant relief, out of concern for the seriousness of defendant's race-discrimination claim. See *Simmons*, 44 F.3d at 1168 (remanding for the granting of conditional *habeas* relief after noting "the seriousness" of the defendant's *Batson* claim and the court's inability to review the claim absent a transcript of the *voir dire* proceedings). As the Court in *Batson* explained, "[t]he core

---

[7]In attempting to show, at trial, that the reasons for excluding the venireperson were race-neutral, the State had articulated a potentially gender-related reason.

guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' race." *Batson*, 476 U.S. at 97-98, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723. In this instance, given the risk that a denial of relief might amount to such approval, we choose to remand the cause simply to determine whether sufficient information about the *voir dire* may be gathered to ensure that racial discrimination in jury selection is not condoned by this court.

We emphasize the limited scope of our decision. We do not conclude that the failure to obtain the presence of a court reporter during *voir dire* creates, in itself, a *per se* presumption of ineffective assistance of counsel. *People v. Thompkins*, 121 Ill. 2d 401, 448 (1988). Nor do we conclude that the mere failure to record *voir dire*, without any claim of error in the jury selection process, requires a remand for reconstruction of the jury-selection proceedings. See, *e.g.*, *People v. Culbreath*, 343 Ill. App. 3d 998, 1005 (2003). This is not to say, however, that our rules are unimportant. We point out that the difficulty presented in the case at bar could have been avoided had the trial judge simply followed the mandate of Rule 608(a)(9). This court has often noted that our rules are not mere suggestions. Rather, "[t]hey have the force of law, and the presumption must be that they will be obeyed and enforced as written." *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995). The situation here confronting us illustrates the importance of our rules and the need for compliance with them.

We hold that where, as in the unusual case before us, a defendant attempts to raise in the trial court a *Batson* claim of discrimination in jury selection, and the claim may not be pursued because trial counsel waived the presence of the court reporter for *voir dire*, in violation of our Rule 608(a)(9), resulting in the absence of a *voir dire* record, the appropriate course, in the first instance, is to remand to the circuit court for an attempt to reconstruct the record of the proceedings regarding the selection of the jury.

The dissent criticizes this approach as "ill conceived" and argues instead that we should simply affirm. Affirmance in this instance would do nothing to address the difficulty, clearly illustrated in the case at bar, that results from noncompliance with Rule 608(a)(9). The dissent itself recognizes the need for such compliance. The dissenting

-14-

justice notes, as do we, that our rules, including Rule 608(a)(9), are not mere suggestions but rather have the force of law. The dissenting justice adds, again agreeing with us, that "the presumption must be that [our rules] are to be obeyed and enforced as written." Slip op. at 24. However, the dissent's only answer to the difficulty presented by noncompliance with Rule 608(a)(9) is that we should "amend the rule's provisions to include appropriate consequences for failure to follow it." Slip op. at 24. This might be an appropriate remedy for future cases, but our task here is to address the case that is actually before us. In this instance, as we have stated, the proper course is to remand to the circuit court for an attempt to reconstruct the *voir dire* record. This is far preferable to the affirmance approach urged by the dissent, which amounts to acquiescence in the face of noncompliance.

Because of our disposition of this case, we need not address, at this time, defendant's other claims that (1) the trial court improperly allowed *voir dire* to proceed with no court reporter present, thereby depriving defendant of due process, and (2) trial counsel failed to tender a jury instruction on identification, thereby rendering ineffective assistance.

A number of cases cited by the State held that a trial court's failure to provide a court reporter during *voir dire* was not a violation of due process. *People v. Ash*, 346 Ill. App. 3d 809, 813 (2004); *People v. Culbreath*, 343 Ill. App. 3d 998, 1005 (2003); *People v. Morris*, 229 Ill. App. 3d 144, 156 (1992); *People v. McClurg*, 195 Ill. App. 3d 381, 388 (1990). Because we do not address defendant's due process claim, we need not consider these cases' conclusions regarding this issue.

Pursuant to this court's supervisory authority, we retain jurisdiction and remand this cause to the circuit court of Peoria County for a hearing to reconstruct the *voir dire* record. This reconstructed record shall be filed with the clerk of this court within 90 days of the date that this decision becomes final.

## CONCLUSION

The cause is remanded to the circuit court with directions to hold a hearing to reconstruct the record of the *voir dire* proceedings which took place at trial.

-15-

*Cause remanded with directions.*

JUSTICE KARMEIER, dissenting:

In this case we are called upon to construe Supreme Court Rule 608(a)(9) (210 Ill. 2d R. 608(a)(9)). When interpreting supreme court rules, our court is guided by the same principles applicable to the construction of statutes. *In re Estate of Rennick*, 181 Ill. 2d 395, 404 (1998); 134 Ill. 2d R. 2(a) & Committee Comments. With rules as with statutes, our goal is to ascertain and give effect the drafters' intention. *In re Storment*, 203 Ill. 2d 378, 390 (2002). The most reliable indicator of intent is the language used, which must be given its plain and ordinary meaning. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 332 (2002).

The language of the rule at issue here provides that, in cases not involving a death sentence, "court reporting personnel *** *shall* take the record of the proceedings regarding the selection of the jury." (Emphasis added.) 210 Ill. 2d R. 608(a)(9). Generally, use of the term "shall" indicates an intention to impose a mandatory obligation. *People v. Thomas*, 171 Ill. 2d 207, 222 (1996). There is no reason to ascribe a different meaning to the term here. The circuit court was therefore under an obligatory duty to have the jury selection proceedings recorded.

The more difficult question posed by this appeal is what, if any, consequences should flow from the fact that the dictates of Rule 608(a)(9) were not followed. This is a separate and distinct inquiry. As our court endeavored to explain in *People v. Robinson*, 217 Ill. 2d 43, 51-54 (2005), it is one thing to hold that a governmental entity is under an obligatory duty which it is required to perform, as opposed to a permissive power which it may exercise or not as it chooses. It is something else entirely to hold that the entity's failure to comply with its obligation should invalidate the action to which that obligation relates. The former inquiry concerns what has been described as the mandatory-permissive dichotomy. The latter, and the one which concerns us now, is the so-called mandatory-directory dichotomy. *People v. Robinson*, 217 Ill. 2d at 51-53; *O'Brien v. White*, 219 Ill. 2d 86, 96 (2006). Whether a statutory command is mandatory or directory presents a question of law, which we review *de novo*.

-16-

*O'Brien v. White*, 219 Ill. 2d at 97. The same is true where, as here, the command is rule-based.

While use of the word "shall" normally denotes that something is mandatory when dealing with the mandatory-permissive dichotomy, the term is not determinative when, as in this case, the mandatory-directory dichotomy is at issue. *People v. Robinson*, 217 Ill. 2d at 53-54. The court must look instead to other factors. In assessing whether a requirement should be read as mandatory rather than directory, a court should consider whether the authors of the requirement specified what should happen if the requirement is not met. When a provision expressly prescribes a consequence for failure to obey its terms, that is strong evidence that the requirements of the provision were intended to be mandatory. *People v. Robinson*, 217 Ill. 2d at 54.

No such prescription was made here. Neither Rule 608(a)(9) nor any other subpart of Rule 608 specifies what, if anything, should happen when the *voir dire* is not recorded in a noncapital case. That does not necessarily preclude the conclusion that the rule's provisions are mandatory and not merely directory. In *People v. Campbell*, 224 Ill. 2d 80 (2006), for example, this court found that the trial court's failure to comply with the provisions of Supreme Court Rule 401(a) (134 Ill. 2d R. 401(a)), dealing with waiver of counsel, rendered the defendant's conviction fatally infirm. There, as here, the rule contained no language specifying what would happen if the requirements of the rule were not followed. The committee comments to the rule, however, indicate that it had been amended to conform to the United States Supreme Court's decision in *Argersinger v. Hamlin*, 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972). As stated in the committee comments, that case held that under the United States Constitution, no imprisonment may be imposed unless the defendant was represented by counsel or has made a knowing and intelligent waiver of his right to counsel. By referencing this authority, the drafters of the rule implicitly recognized that there would be a consequence for noncompliance, a very serious one. In light of that constitutionally based consequence, setting out the repercussions of

noncompliance separately was unnecessary.[8]

No similar circumstances are present in this case. The courts of Illinois have consistently rejected the claim that the failure to record *voir dire* violates constitutional protections. See, *e.g.*, *People v. McClurg*, 195 Ill. App. 3d 381 (1990). In contrast to *People v. Campbell*, the absence in Rule 608(a)(9) of an express consequence for failure to comply with its provisions therefore cannot be attributed to the fact that a constitutionally based remedy is available.

I do not see and the majority opinion has not identified any other factors that would support a conclusion that failure to comply with the recording requirement of Rule 608(a)(9), in and of itself, renders the subsequent trial invalid. Under the mandatory-directory dichotomy our court has articulated, the rule's recording requirement is therefore directory. As such, it may be waived by the parties. See, *e.g.*, *In re Estate of Zander*, 242 Ill. App. 3d 774, 777 (1993).

That the recording requirement may be waived is further supported by comparison to other situations in which waiver is permissible. The courts of Illinois have recognized that criminal defendants may waive such rights as the right to a speedy trial (*People v. Laws*, 200 Ill. App. 3d 232, 235 (1990)), to counsel (*People v. Haynes*, 174 Ill. 2d 204, 235 (1996)); to a jury of 12 (*People v. Barrier*, 359 Ill. App. 3d 639, 642 (2005)); to confront witnesses against them (*People v. Campbell*, 208 Ill. 2d 203 (2003));

---

[8]Although the analysis in *Campbell* purported to rely on the language of Rule 401(a) rather than the underlying constitutional principles governing the right to counsel, the constitutionally based consequences of noncompliance are essential to the result it reached. If the existence of such consequences were absent from the analysis and the case rested solely on the text of the rule, it could not be squared with the analytical framework we set forth in *People v. Robinson* for understanding the mandatory-directory dichotomy, nor could it be reconciled with decisions such as *People v. Henderson*, 217 Ill. 2d 449 (2005), where we held that failure to comply with the admonitions required by Supreme Court Rule 605(a), which also employed the word "shall," did not automatically require reversal and remand in every instance.

and to be free from double jeopardy (*People v. Dieterman*, 243 Ill. App. 3d 838, 843 (1993)). All of these rights are more significant than the right to have jury-selection proceedings recorded. If they can be waived, the right to have jury-selection proceedings recorded must likewise be subject to waiver. Any construction of Supreme Court Rule 608(a)(9) that would yield a contrary result would, in effect, confer greater protection on the right to have jury selection recorded than it would on the right to be tried by a jury. Such a result is absurd. We must therefore reject it. See *In re Loss*, 119 Ill. 2d 186, 194 (1987) (a rule, like a statute, must be construed to avoid an unjust result).

There is no dispute that a waiver of the recording requirement was made in this case by both the defendant and the State. Having waived strict compliance with Supreme Court Rule 608(a)(9), defendant cannot now assert that the failure to have the jury-selection procedure recorded pursuant to Rule 608(a)(9) was reversible error. To hold otherwise would require us to ignore the well-established principle that a party may not complain of error where doing so is inconsistent with the position he took in the earlier court proceeding or where the alleged error is one to which he consented. *McMath v. Katholi*, 191 Ill. 2d 251, 256 (2000).

The failure of trial counsel to insist on the presence of court reporting personnel during *voir dire* is not a novel circumstance. It has been considered by the courts in Illinois on at least six previous occasions. None of those decisions support the majority's resolution of the case before us today.

*People v. Steel*, 52 Ill. 2d 442, 452 (1972), was decided by our court over 30 years ago. In an argument that echoes the one made on appeal in this case, the defendant in *Steel* contended that his trial counsel was incompetent for failing to insist upon the presence of a court reporter during *voir dire* because, among other things, that failure precluded defendant from establishing that the jury may have been prejudiced against him. We rejected that argument, noting that there, as here, a court reporter was always available and could have been summoned at any time.

A similar situation was present in *People v. Thompkins*, 121 Ill. 2d 401 (1988). The defendant there also maintained that the performance of his court-appointed counsel was ineffective based, in

part, on the lawyer's failure to insist upon the presence of a court reporter during *voir dire*. According to the defendant, the failure to record jury selection was prejudicial because it "preclud[ed] his appellate counsel from raising any potential issues regarding improper excusal of prospective jurors." *People v. Thompkins*, 121 Ill. 2d at 447. Citing our previous decision in *People v. Steel*, 52 Ill. 2d 442 (1972), we rejected that contention, holding that the mere failure to obtain the presence of a court reporter during *voir dire* does not constitute a *per se* presumption of ineffectiveness of counsel. We further ruled that counsel's failure to insist upon the presence of the court reporter during a portion of the *voir dire* proceedings was not such an extreme and limited circumstance, such as the total absence of counsel, that prejudice could be presumed. *People v. Thompkins*, 121 Ill. 2d at 448.

The issue next arose in *People v. McClurg*, 195 Ill. App. 3d 381 (1990), in which the defendant appealed her conviction for driving under the influence of alcohol. Prior to the commencement of the trial, the court had advised the defendant that there were not enough court reporters to make one available during jury selection, but that a reporter would be available later so that a record could be made. In assailing her conviction, the defendant included among her numerous arguments that the failure of the trial court to provide a court reporter during *voir dire* deprived her of the ability to preserve her objections for review and denied her right to due process. The appellate court rejected that contention, noting that the rules of our court clearly provide alternative methods for preserving the record where no verbatim transcript is available. In the appellate court's view, defendant could have availed herself of those rules and submitted a bystander's report or agreed statement of facts. Because she failed to do either, the court concluded that she had waived any argument concerning the sufficiency of the record and the propriety of the trial court's rulings during *voir dire*. *People v. McClurg*, 195 Ill. App. 3d at 388.

*McClurg* was followed by *People v. Morris*, 229 Ill. App. 3d 144 (1992), authored by former Chief Justice McMorrow shortly before she was elected to our court. In that case, which involved a felony prosecution, the court made some preliminary remarks to the initial group of prospective jurors. It then asked defense counsel and the

prosecutor to step forward to the bench and stated the following:

> " 'The court reporter informed me she has an appointment with her doctor. Would you please excuse her for the impaneling of the jurors? Before doing that would all of the perspective [*sic*] jurors raise their right hands please.
>
> (WHEREUPON THE JURORS WERE SWORN IN.)
>
> THE COURT: Ms. Reporter, you are excused.' " *People v. Morris*, 229 Ill. App. 3d at 154-55.

The court reporter was then excused while *voir dire* was conducted. That was the only portion of the proceedings for which she was absent. Court reporting was thereafter resumed for opening statements by the State and defense counsel, as well as for the remainder of defendant's trial. Defendant was subsequently found guilty and sentenced to a term of imprisonment.

On appeal, defendant claimed that the trial court committed reversible error when it permitted jury selection to take place without transcription by a court reporter. Following the approach taken in *McClurg*, the appellate court rejected this argument, holding that defendant could have obtained a bystander's report or an agreed statement of facts as permitted under the rules of our court and that his failure to do so precluded him from asserting that the court's ruling was reversible error. *People v. Morris*, 229 Ill. App. 3d at 156.

In a related argument, the defendant further contended that his attorney was ineffective for having agreed to excuse the taking of *voir dire* by a court reporter. The appellate court rejected this argument as well. Citing our decision in *People v. Thompkins*, 121 Ill. 2d 401, 448 (1988), it held that defense counsel's failure to obtain the presence of a court reporter for *voir dire* does not create a *per se* presumption of ineffective assistance of counsel. To prevail on a claim that the attorney was ineffective, the defendant was required to point to some error in selection of the jury. The court further held that it was incumbent upon the defendant, as appellant, to obtain a bystander's report, or stipulated statement of facts, in lieu of a verbatim transcript of the *voir dire*. The court concluded that in the case before it, defendant had failed to satisfy these burdens. He was unable to specify any particular error that occurred during jury selection and failed to procure a bystander's report or stipulated statement of facts

-21-

regarding jury selection. As a result, the court rejected defendant's claim that he was entitled to a new trial. *People v. Morris*, 229 Ill. App. 3d at 156-57.

*People v. Culbreath*, 343 Ill. App. 3d 998, 1005-06 (2003), is in accord. In that case, the defendant was tried on two counts of aggravated battery. On the first day of the trial, the presiding judge asked counsel for defendant and the State if either party wanted a court reporter to be present to record the *voir dire*. The State responded in the negative. Counsel for defendant indicated that he would be willing to waive the presence of a reporter, subject to the understanding the reporter would be nearby in case a record of something needed to be made. The court then excused the court reporter and proceeded with jury selection. A court reporter was present for the remaining proceedings in the case.

Defendant was ultimately convicted, sentenced to a term of imprisonment and ordered to pay restitution to his victim. *People v. Culbreath*, 343 Ill. App. 3d at 1001. On appeal, defendant raised various grounds for assailing the judgment. Among these were: (1) that by conducting *voir dire* of prospective jurors without a court reporter present to transcribe the proceedings, as required by Supreme Court Rule 608(a)(9) (177 Ill. 2d R. 608(a)(9)), the trial court had violated his right to due process; (2) the failure to have a court reporter present to transcribe *voir dire* resulted in the denial of his right to effective assistance of appellate counsel; and (3) his trial counsel did not have the authority to waive the court reporter's presence at *voir dire* because that decision belonged to defendant alone. *People v. Culbreath*, 343 Ill. App. 3d at 1005.

The appellate court rejected all these arguments. Following *McClurg* and *Morris*, it reiterated the principle that the failure to provide a court reporter during *voir dire* does not deprive a defendant of due process. It further held that because the rules of this court provide alternate means for preserving the record and because the defendant failed to avail himself of those options, defendant was precluded from arguing that the court's failure to provide a court reporter during *voir dire* constituted reversible error. *People v. Culbreath*, 343 Ill. App. 3d at 1006.

Finally, the appellate court concluded, based on precedent from this court, that the decision to conduct *voir dire* without a court

reporter present was not among those which must be made personally by the defendant. That decision, in the appellate court's view, could be made by defense counsel. In so ruling, the appellate court rejected the notion that defense counsel's waiver of the court reporter's presence for *voir dire* creates an inherent conflict of interest by creating a situation in which counsel could prevent the defendant from raising claims against him. The reason the waiver does not create a conflict is that it does not, in fact, preclude a defendant from challenging his attorney's conduct during *voir dire*. As previously indicated, a defendant may substantiate claims of ineffective representation pertaining to *voir dire* by means of a bystander's report or an agreed statement of facts. Neither of those options was attempted by the defendant in that case. *People v. Culbreath*, 343 Ill. App. 3d at 1007-08.

The sixth and most recent case, *People v. Ash*, 346 Ill. App. 3d 809, 812-14 (2004), was decided the year after *People v. Culbreath*, 343 Ill. App. 3d 998 (2003), and involved a similar situation in which the trial court asked counsel for the parties if they wished *voir dire* to be recorded by a court reporter. Both declined. Defendant was ultimately convicted of a drug-possession offense. As grounds for his appeal, the defendant argued that the trial court committed reversible error by failing to have jury-selection proceedings reported as required by Supreme Court Rule 608(a)(9) and that his trial counsel rendered ineffective assistance by agreeing to waive the recording of *voir dire*. *People v. Ash*, 346 Ill. App. 3d at 812.

As in all the cases which preceded it, the appellate court in *Ash* found these arguments to be without merit. The court opined that the requirements contained in Rule 608(a)(9) could validly be waived by counsel on the defendant's behalf and that the trial court was entitled to rely on defense counsel's decision to decline having *voir dire* recorded. The court further held that defendant had failed to demonstrate that his attorney's decision to forgo recording of *voir dire* deprived him of a fair trial. Defendant's claim was based solely on counsel's decision to allow *voir dire* to proceed without a court reporter, and in the court's view, "[e]xcusing the court reporter from taking notes of *voir dire* is not, in and of itself, ineffective assistance [citations] or a violation of due process [citations]." *People v. Ash*, 346 Ill. App. 3d at 813-14.

-23-

In light of this unbroken line of precedent, which the appellate court in this case applied properly, the majority's characterization of the case as unique or unusual is unfounded. The problem presented by this case, failure to record *voir dire* as Rule 608(a)(9) requires, is, in fact, all too common. Its frequent reoccurrence is perplexing. Given the clear language of the rule, it is difficult to understand why a trial court would suggest that conducting jury selection without the presence of a court reporter might be appropriate or permissible. As we held in *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995), and as the majority reminds us, our rules are not suggestions. They have the force of law, and the presumption must be that they are to be obeyed and enforced as written. Rule 608(a)(9) is no different. If trial courts are unwilling to comply, it is incumbent on us to amend the rule's provisions to include appropriate consequences for failure to follow it. Fashioning *ad hoc* remedies as the majority does here is unsound, especially where, as in this case, doing so requires the court to ignore an unbroken line of cases dating back over 30 years.

In an effort to justify its approach, the majority attempts to distinguish this case from past precedent on the grounds that it involves a situation in which the failure to record *voir dire* is tied to a specific claim of prejudice by the defendant, namely, that it hampered his ability to establish that he was denied equal protection under the principles established by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986). According to the majority, remand for further proceedings is necessary in order to dispel any notion that our court condones racial discrimination in jury selection in contravention of *Batson*. Slip op. at 14.

I share my colleague's concern with honoring the precepts of *Batson*. Contrary to the majority, however, I do not believe that this case can properly be characterized as presenting a *Batson* claim. As a preliminary matter and as the majority acknowledges, no mention of *Batson* was made in either the posttrial motion filed by defense counsel or the *pro se* posttrial motion submitted by defendant himself. The suggestion that *Batson* considerations might be relevant was injected into the case for the first time by defendant's counsel on appeal. Even then, it was not the focus of defendant's petition for leave to appeal, his brief or his reply brief. In fact, when defendant's

reply brief mentions *Batson*, it is not to buttress any claim of racial discrimination in this case, but merely to illustrate why defendant believes, as a matter of policy, that strict enforcement of the court reporting requirement in Rule 608(a)(9) is so important. When defendant speaks of possible *Batson*-related problems in this context, he refers to "a hypothetical defendant," not himself.

Wholly aside from these considerations, I do not believe that appellate counsel's *Batson* analysis is meritorious. That there might be an actual *Batson* problem in this particular case is predicated on a document styled "affidavit" which was appended to defendant's *pro se* posttrial motion and motion to suppress confession. In that affidavit, defendant stated:

> "Judge Maher I know you tried to be fair as possible and you was but I felt a predjudice [*sic*] and discrimanating [*sic*] patter[n] going on with the jury. I'm not predjudice [*sic*] but I strong feel some of the jury was. I mean let's look at it eleven white people and one black person ***."

The affidavit then continued with the charge that the one black person on the jury was likely to have been biased against defendant because her brother had recently been murdered and she still carried "emotion's [*sic*] about guns and people being shot." In addition, the affidavit asserted that the lone black juror knew defendant and had lied when the court asked here whether she knew anyone involved in the case.

Along with this affidavit, defendant's appellate counsel also cited an allegation in trial counsel's posttrial motion regarding the composition of the jury. That allegation, which paraphrased defendant's affidavit, stated simply that

> "of the twelve jurors in this cause, there was only one black and when the court asked said black lady if she knew anyone, either the attorneys or any of the proposed witnesses or the Defendant she stated she did not know the Defendant but in reality said Defendant has subsequently learned that the said black lady did know him."

Contrary to the majority's view, these assertions do not echo language in *Batson*. The *Batson* decision did not pertain to the bias that may result from personal acquaintance. It did not even address

-25-

the bias that may result when the members of the jury happen to be of a different race from the defendant. Rather, it was concerned specifically with purposeful discrimination by the State in the selection of the jury through the use of peremptory challenges. *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986).

Nothing in any of the materials filed by defendant or on his behalf in the trial court charges that such purposeful discrimination by the State occurred here. A pattern of discrimination by the jury, which is what defendant alleged, is analytically and constitutionally distinct from a pattern of discriminatory strikes against black venire members by the prosecution, which is what the defendant in *Batson* alleged. *Batson v. Kentucky*, 476 U.S. at 83-84, 90 L. Ed. 2d at 78-79, 106 S. Ct. at 1715-16. While it may be true that the jury ended up with 11 white jurors and only one African American, there is no indication that this composition was the result of anything other than the demographics of Peoria County.

To support its view that this case is properly viewed as presenting *Batson* concerns, the majority asserts that "the State does not dispute that defendant's complaint about the racial composition of his jury was a *Batson* claim." Slip op. at 9 n.4. The majority's implication is that the State, in its brief, somehow conceded that arguments advanced by defendant and his attorney in the trial court were predicated on *Batson*. The State made no such concession. So far as I can tell, the question of *Batson* is not even mentioned in the State's brief. It did not need to be mentioned because it was not essential to the State's arguments in support of the trial court's judgment.

In addressing the question of why *Batson* was not specifically raised in the trial court, my colleagues fail to consider an obvious explanation, namely, that counsel recognized that no grounds for a *Batson* challenge existed. Instead, the majority intimates that defendant's trial counsel refrained from invoking *Batson* out of concern that doing so would have required him to argue his own ineffectiveness. I regard such a suggestion as wholly unjustified. Rather than assuming that an attorney's representation was tainted by self-interest or otherwise flawed, we must assume, absent evidence to the contrary, that counsel satisfied his professional obligations. Indeed, there is a strong presumption under Illinois law that the performance of a defendant's attorney fell within the range of

reasonably adequate representation. *People v. Owens*, 129 Ill. 2d 303, 318 (1989). My personal experience has been that such a presumption is justified, particularly when defense counsel is as experienced as defendant's trial counsel was in this case.

When counsel in this case acquiesced in dispensing with a court reporter for *voir dire*, they did so with the understanding that the reporter would be available in the event that a problem arose requiring that a record be made. Had the State's exercise of its peremptory challenges raised a *Batson* issue, there is no reason to believe that defendant's lawyer would not have exercised this option and summoned the reporter to record the proceedings. Based on the record before us, it appears that he was diligent in all other aspects of his representation. That he did not deem it necessary to call in the reporter to make a record of what occurred during *voir dire* is therefore not evidence of lack of effective representation. It is evidence of lack of error.

Finally, I am puzzled by the remedy fashioned by my colleagues. That is so for three reasons. First, remanding for a hearing to reconstruct what took place during *voir dire* is not a resolution defendant himself has requested. Indeed, in his reply brief defendant contends that anything less than a full recording of the *voir dire*, which was not made and does not exist, will be inadequate. Second, to the extent that a record of what took place could be reconstructed, the time to attempt such reconstruction was immediately after the trial concluded. As noted in *McClurg*, *Morris*, and *Culbreath*, our rules provide for alternate means for preserving the record, and if a defendant fails to avail himself of those alternatives he cannot complain on appeal that the failure to provide a court reporter during *voir dire* constitutes reversible error. Third, even if some principle of justice could excuse defendant's failure to act earlier, the passage of time has probably doomed any realistic hope of reconstructing the record of *voir dire* now. As a result, the remand ordered by the majority is, in the end, likely to be a meaningless act. The case is almost certain to return to us in essentially the same posture as it is now. What then? Nothing in the majority's present analysis explains what the next step should be.

For the foregoing reasons, I believe that the majority's analysis is unsound and that the remedy it fashions is ill conceived. In my view,

the appellate court resolved this case correctly under the law. Although the majority did not reach defendant's remaining issue pertaining to counsel's failure to tender an instruction on identification, I believe that the appellate court resolved that issue correctly as well. The appellate court's judgment should therefore be affirmed. Accordingly, I respectfully dissent.