**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250125-U

Order filed March 27, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-25-0125 Circuit No. 21-CF-854 |
| | ) | |
| MASON D. WESTFALL, | ) ) | Honorable William S. Dickenson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HETTEL delivered the judgment of the court.
Justices Peterson and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:    Counsel's failure to object to the admission of the victim's statement did not constitute ineffective assistance of counsel.

¶ 2     Defendant, Mason D. Westfall, appeals from his conviction for domestic battery. Defendant argues that the Kankakee County circuit court committed plain error by allowing the State to enter the victim's written statement into evidence. Alternatively, defendant contends that counsel was ineffective for failing to object to the admission of the statement. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          The State charged defendant with domestic battery (720 ILCS 5/12-3.2(a)(1) (West

2022)), in that he knowingly caused bodily harm to Caitlyn Weiss when he grabbed and

squeezed her hand. At a jury trial, Weiss testified that in December 2021, she was living with

defendant and their three-month-old child and was employed at a Meijer gas station. On

December 18, when Weiss returned home from work, she found defendant calm. Defendant

asked her to play video games with him, and she declined but said she would play later.

Defendant asked Weiss several times over the course of 30 minutes. Within that time, defendant

became "[i]rritated" at Weiss for not playing with him, until finally she agreed. When the

controller stopped working while they were playing, defendant became "angry" and "began

yelling." Defendant placed himself within a foot of Weiss's face. Defendant continued to yell at

Weiss, causing her to feel scared. Weiss attempted to calm defendant down by changing the

subject, but defendant restarted the argument. At some point, defendant took "an empty beer can

and smashed it against [Weiss's] forehead," which "hurt." Weiss believed that defendant was

"acting unpredictable," making her feel unsafe staying at home with defendant. Weiss suggested

they drive around to view Christmas lights.

¶ 5          Weiss drove and defendant rode in the front passenger seat. While driving, defendant

became agitated. Defendant "started blaring" heavy metal music and refused to turn it down

when Weiss raised concerns about harming their child. When Weiss attempted to turn the

volume down, defendant would "swa[t]" her hand away or turn the volume back up. At one

point, defendant grabbed her hand and "squeezed it really hard *** like, crushing it, and he

wouldn't let go." Weiss thought defendant might have broken her hand. When defendant's

aggression continued to escalate, Weiss drove to her work. Upon reaching Meijer, defendant

                                                   2

"immediately put his hands on the steering wheel" and tried to "crash[ ]" the vehicle. Weiss maintained enough control to avoid an accident, but defendant "just kind of started laughing," which terrified Weiss. Defendant repeated this action approximately three more times. Weiss parked at the gas station, removed the child from the vehicle and entered the store while defendant remained in the vehicle. Weiss was concerned for her and her child's safety and feared defendant's behavior would escalate. While inside, defendant yelled from the vehicle for Weiss to "hurry up" and "blar[ed] the horn nonstop." After roughly 30 minutes, defendant entered the gas station. Weiss took the child behind the counter because she was scared. The police were called, and Weiss completed a written statement.

¶ 6    On cross-examination, Weiss testified that she did not observe defendant consuming alcoholic beverages that night despite testifying that defendant crushed a beer can on her head. Weiss admitted giving both oral and written statements to the police. Weiss reviewed her written statement and indicated that she did not include that defendant crushed a beer can on her head, swatted her hand while they were arguing over the volume of the music, grabbed her hand tightly, or tried to crash the vehicle. Weiss refused medical treatment. Weiss testified that she had an ongoing child custody case with defendant, which was initiated by defendant approximately one year after the incident.

¶ 7    Through Sergeant David Kline, the State moved to enter Weiss's written statement. Defense counsel stated, "No objection, [Y]our Honor." The court admitted the statement. The State asked Kline to read the statement to the jury. When the court inquired as to defense counsel's position, counsel responded, "No objection." Kline read Weiss's statement as follows:

> "Got off work around 6:00 p.m. Not sure if [defendant] was drinking while I was gone. He got angry, so I redirected and said we should *** look at X-mas lights.

3

*** Pulled into the back of the Meijer parking lot, and he kept blaring the music and hitting buttons. He then grabbed my right hand and tried to grab the steering wheel while trying to crash us ***.

I pulled into the gas station and took the baby out of the car and brought him inside with me. ***

He kept blaring the horn. Caused a scene. *** [Defendant] came inside and he walked around the counter and tried to get to me. [My coworkers] told him to go back outside."

¶ 8      Defendant testified that on December 18, he was ill and at home with their child while Weiss was working. When Weiss returned home, they watched a movie and Weiss suggested they take a drive to look at Christmas lights. Defendant agreed even though he was not feeling well. Defendant denied taking hold of the steering wheel, grabbing Weiss, fighting, or listening to loud music before Weiss drove to the gas station. At the gas station, Weiss took the child inside while defendant waited in the vehicle. Defendant did not have his phone and did not want to go inside because he was ill. Instead, defendant honked the horn "a couple times every five, ten minutes." After approximately 40 minutes, defendant entered the gas station and was asked to leave because he was not wearing a shirt.

¶ 9      During the jury instruction conference, defense counsel proposed the use of Illinois Pattern Jury Instructions, Criminal, No. 3.11 (approved Oct. 17, 2014) for prior inconsistent statements. Specifically, counsel asked to include only the sections related to impeachment evidence because counsel did not "think that anything that [she] impeached on was *** substantive." The court agreed the statements were "just offered for impeachment." The court instructed the jury according to counsel's request.

4

¶ 10    In closing argument, the State read Weiss's written statement and commented, "[t]hat is very similar to what you heard on the stand, and what you heard on the stand filled in the gaps from that; added additional detail." The State addressed Weiss's inconsistent statements and said, "Maybe, as Defense suggested, should [Weiss] have written every single detail in this?" The State also said, "Is that a big deal? I would submit it's not. I guess that's for you to decide." Additionally, the State said, "[W]hat [Weiss] told you on the stand is nearly identical to ***her written statement." In their closing argument, defense counsel addressed Weiss's inconsistencies, incredible testimony, and motive to lie. Specifically, counsel highlighted Weiss's testimony, which was not in the written statement, including that defendant crushed a beer can on her head and defendant took hold of the steering wheel and attempted to crash the vehicle three times. Counsel also argued that Weiss had an interest in embellishing her testimony due to the ongoing child custody case. The jury found defendant guilty and sentenced defendant to a concurrent term of 24 months' probation. Defendant appealed.

¶ 11                                   II. ANALYSIS

¶ 12    Defendant argues the circuit court erred by allowing the State to enter Weiss's written statement into evidence. Alternatively, defendant contends that counsel was ineffective for failing to object to the admission of the statement.

¶ 13    At the outset, we note that defendant concedes that he forfeited the underlying issue by failing to raise it below. Defendant first asserts that the court erred by admitting the written statement into evidence, and we should review the error under the plain error doctrine. However, in *People v. Quezada*, 2024 IL 128805, ¶ 59, our supreme court declined to apply plain error review in a similar instance. In *Quezada*, the State introduced videotaped statements and defense counsel indicated that it had no objection. *Id.* The supreme court stated, "When a defendant

actively invites or acquiesces to the admission of a piece of evidence at trial, he cannot challenge the admission of that evidence as plain error on appeal." *Id.* This is because acquiescence "does not raise a mere forfeiture to which the plain-error exception might apply; it creates an estoppel that precludes plain-error analysis." (Internal quotation marks omitted.) *Id.* Therefore, we find that defendant is estopped from challenging the admission of Weiss's statement under plain error.

¶ 14    Alternatively, defendant argues that counsel was ineffective for failing to object to the admission of the statement. To establish ineffective assistance of counsel, a defendant must show: (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced defendant's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong, the reviewing court "must give deference to counsel's conduct within the context of trial and without the benefit of hindsight." *People v. King*, 316 Ill. App. 3d 901, 913 (2000). As such, defendant must overcome a strong presumption that counsel's action or inaction was the result of sound trial strategy. *People v. Houston*, 226 Ill. 2d 135, 144 (2007). "Errors in trial strategy do not constitute ineffective assistance unless counsel entirely fails to conduct any meaningful adversarial testing ***." (Internal quotation marks omitted.) *People v. Custer*, 2019 IL 123339, ¶ 39. Even if a trial strategy did not result in an outcome favorable to defendant, we "must make every effort to eliminate the distorting effects of hindsight." (Internal quotation marks omitted.) *People v. Peterson*, 2017 IL 120331, ¶ 88. Allegations of ineffectiveness based on trial strategy generally fail because "counsel's strategic choices that are made after investigation of the law and the facts are virtually unassailable." *People v. Ramsey*, 239 Ill. 2d 342, 433 (2010). Under the second prong, defendant must show that, but for counsel's deficient representation, there is a reasonable probability that

6

the result of the proceedings would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Defendant bears the burden of proof for both prongs under *Strickland* and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Enis*, 194 Ill. 2d 361, 377 (2000).

¶ 15    Here, the record shows that counsel's trial strategy focused on discrediting Weiss based on her prior inconsistent statements included in her written statement and trial testimony. In fact, defense counsel was the first to address Weiss's statement during her cross-examination. As evidence of trial strategy, counsel requested the prior inconsistent statement jury instruction to address the impeachment evidence which the court provided to the jury. Counsel's questioning and arguments at trial relied heavily on these statements. Additionally, portions of Weiss's written statement worked to defendant's benefit and supported counsel's trial strategy. As evidence that Weiss was not credible, counsel impeached Weiss for failing to include relevant facts in her written statement. Therefore, acquiescence to the State's motion to admit Weiss's written statement was a reasonable strategic choice. Although counsel's strategy was ultimately unsuccessful, we cannot conclude that counsel's acquiescence in the admission of Weiss's written statement was "irrational and unreasonable in light of the circumstances that defense counsel confronted at the time." *People v. Faulkner*, 292 Ill. App. 3d 391, 394 (1997). Because defense counsel's actions were based on trial strategy, defendant cannot establish deficient performance and defendant's claim of ineffective assistance of counsel must fail. *Enis*, 194 Ill. 2d at 377.

¶ 16                                      III. CONCLUSION

¶ 17    The judgment of the circuit court of Kankakee County is affirmed.

7

¶ 18        Affirmed.