2022 IL App (2d) 200647-U
No. 2-20-0647
Order filed September 12, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Petitioner-Appellee, | ) ) | |
| v. | ) ) | No. 96-CF-61 |
| LEONARDO LECHUGA, | ) ) ) | Honorable Kathryn D. Karayannis, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Jorgensen and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Trial court did not err in dismissing second-stage postconviction petition.

¶ 2    The defendant, Leonardo Lechuga, was convicted of attempted first degree murder (720 ILCS 5/8-4, 9-1(a)(1) (West 1995)), armed violence (*id*. § 5/33A-2), aggravated discharge of a firearm (*id.* § 5/12-1.2(a)(2)), and aggravated battery (*id.* § 5/12-3.05(e)), and those convictions were affirmed on direct appeal (*People v. Lechuga*, 361 Ill. App. 3d 1099 (2005) (table) (unpublished order under Supreme Court Rule 23)).  The defendant then filed a postconviction

petition. The trial court appointed counsel to assist him. The trial court later dismissed his petition, and he appeals. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On January 10, 1996, the defendant was driving a car in which Javier Parras was a passenger. Parras began to shoot at two men in another car, whom he believed to be members of of a rival gang. In fact, they were undercover police officers. The officers chased Parras's car and returned fire, firing 30 rounds through the windshield of their car. The defendant was ultimately charged with six counts of attempted murder, two counts of aggravated battery with a firearm, armed violence, and aggravated discharge of a firearm. All of the counts were based on an accountability theory.

¶ 5     One of the officers, Joseph Groom, was shot through the right thumb during the shootout. Groom testified at trial that the injury occurred on Anderson Street in Aurora as he shot toward Parras's car with his right hand outside of the front passenger window. He felt a jolt in his hand and, when he drew it back inside the car, he saw that his thumb was bleeding. Groom's partner, Kevin Triplett, who was driving, testified that, as they were driving on Anderson after the initial exchange of gunfire, Groom fired his gun out of the passenger side window. Groom then jerked his hand back inside and said that he had been shot in the hand, but he was okay.

¶ 6     At trial, a doctor testified about Groom's injury and opined that, based on x-rays and the characteristics of the two wounds to Groom's thumb, the bullet entered Groom's thumb at the tip and exited near the base of his thumb. A police evidence technician testified that no shell casings were found on Anderson, but a round fired from a police-issued weapon had struck a car parked on Anderson. The technician also testified that no one had collected any of the officers' clothing

after the incident, including "Groom's jacket." Groom testified on cross-examination that he still had the clothing he had been wearing during the incident, although it had been laundered.

¶ 7    Prior to trial, defense counsel moved for the appointment of an expert on ballistics and firearms to assist the defense in establishing "which bullet holes came from where and what the trajectory was." Defense counsel noted that Groom had been shot in the hand and stated that "we don't know who shot him in the hand"—Groom could have been shot by Parras, or by Triplett, or by himself as he was reloading. The trial court granted the motion and, at defense counsel's request, appointed John Koziol.

¶ 8    Koziol issued a report that was critical of Triplett's and Groom's actions in firing so many rounds from inside a moving vehicle. Granting a motion *in limine* by the State, the trial court barred Koziol from testifying that the shots were fired in a "wild and unaimed" fashion, suggesting that the officers had acted recklessly, or opining about the officers' training and whether they acted properly. Defense counsel argued that Koziol should be able to testify about the characteristics of Groom's injury and the direction that the bullet could have come from. He also asserted that Koziol was also qualified to opine that, under proper police procedure, the officers' clothing should have been collected, examined, and tested. The trial court barred Koziol from offering any testimony about the wound characteristics of Groom's thumb injury, as he had no medical expertise. However, the trial court ruled that Koziol could testify about "whether or not this wound could have come from a shot fired from within the car interior."

¶ 9    At trial, Koziol testified as an expert in bullet path identification and accident reconstruction. He had examined the car driven by the officers and concluded that all of the holes in the windshield were made by bullets fired from inside the car. There was no indication that any bullets, including the one that made a dent in the car's hood, struck the car from the opposite

direction. Defense counsel did not question Koziol about his opinion regarding defects in the police investigation of the incident, including the failure to collect the officers' clothing. However, in closing, the defense argued at length about the improbability of the officers' testimony that Groom was shot in the hand while his hand was outside of the police car, highlighting the failure to collect and test Groom's clothing. Defense counsel also argued that damage to Groom's sleeve and to his face or arm would likely have resulted if Groom had indeed been sighting down the barrel of his gun as he claimed.

¶ 10    After the trial, the jury found the defendant guilty of attempted murder of Groom, armed violence, aggravated discharge of a firearm, and aggravated battery. He was acquitted of the other counts against him. The jury also found that he did not know that the undercover officers were in fact police officers. The defendant was sentenced to to 20 years for attempted murder and 15 years for the armed violence, to be served concurrently. The other convictions were merged into the attempted murder conviction. His convictions were affirmed on direct appeal. *Lechuga*, 361 Ill. App. 3d 1099 (2005) (table) (unpublished order under Supreme Court Rule 23).

¶ 11    In June 2006, the defendant filed a postconviction petition. Shortly thereafter, the trial court appointed postconviction counsel and docketed the case for further proceedings. An inexplicable 13-year delay then occurred. During that interval, the defendant completed his sentence and was released. No issue has been raised by anyone regarding this delay.

¶ 12    In May 2019, postconviction counsel filed an amended petition for postconviction relief. As relevant to this appeal, the amended petition asserted that the defendant's trial counsel rendered ineffective assistance by failing to elicit testimony from Koziol on either (1) Groom's entry and exit wounds, or (2) the deficiencies in the police investigation, including the failure to collect Groom's clothing, examine it, and test it for evidence of gunpowder stippling. He also argued

that, if the trial court agreed as to either of these claims, his appellate counsel on his direct appeal was also ineffective for failing to raise these arguments.

¶ 13    The amended petition included an affidavit from Koziol in which he averred (as relevant here) that he met with the defendant's trial counsel prior to trial and told him that among the "obvious deficiencies" in the prosecution's evidence was the failure by the police evidence technicians to take Groom's clothing (and gloves, if Groom was wearing them) into evidence and submit them to the crime laboratory.  Koziol said that he told defense counsel that he could opine that "an examination of officer Groom's gloves could have revealed" a particular gunpowder stippling pattern "and, if so, this would support the conclusion that [the] wound to *** Groom's thumb was either self-inflicted or caused by *** Triplett."  Further, if events had in fact unfolded as the officers described in their police reports, it would be expected that the bullet that caused Groom's injury would also have damaged the sleeve of the clothing he was wearing.  Koziol averred that, after he told the defendant's trial counsel all this, and also that he believed he could opine on the "forensic pathology" of Groom's injury including the entry and exit wounds, counsel advised that he would not be questioning Koziol in any of these areas, as counsel believed that the trial court "would only allow expert testimony regarding the entry and exit wounds" to be given by witnesses with medical expertise.

¶ 14    The State moved to dismiss the amended petition, arguing that the record demonstrated that Koziol was not qualified to opine regarding Groom's injury under *People v. King*, 2020 IL 123926, ¶ 37.  The State also argued that there was no showing that the collection, examination, or testing of Groom's clothing would have yielded any evidence favorable to the defendant, and mere speculation about the possible results was legally insufficient to support a claim of ineffective assistance of counsel.

¶ 15    The trial court granted the motion to dismiss, agreeing with the State that, under *King*, Koziol was not qualified to testify regarding Groom's injury. It did not explicitly address the claim that counsel was ineffective for failing to elicit Koziol's opinions about the alleged shortcomings of the police investigation. This appeal followed.

¶ 16                                II. ANALYSIS

¶ 17    On appeal, the defendant raises only one ground of ineffective assistance of trial counsel: that his trial counsel rendered unconstitutionally deficient assistance by failing to elicit Koziol's criticism of the police investigation because it failed to collect, examine, and test Groom's clothing. As before, the defendant also argues that, if we conclude that the defendant made a substantial showing of a constitutional violation of his right to effective trial counsel, his appellate counsel was ineffective in failing to raise this argument on direct appeal. However, as we conclude that the defendant failed to make a substantial showing that his trial attorney's performance prejudiced him, we do not reach his argument about appellate counsel.

¶ 18    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2018)) provides a means by which a defendant may challenge his conviction or sentence for violations of federal or state constitutional rights. *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005). The Act sets forth three stages of review. At the first stage, the trial court may summarily dismiss a postconviction petition as frivolous and patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018). If the petition is not dismissed, it advances to the second stage.

¶ 19    At the second stage, the defendant is appointed counsel, who must consult with the defendant, examine the record, and amend the petition as necessary to ensure that the defendant's contentions are adequately presented. *People v. Gerow*, 388 Ill. App. 3d 524, 526 (2009). The State may then move to dismiss the petition. *Id.* In considering such a motion to dismiss, the trial

court must take as true " 'all well-pleaded facts that are not positively rebutted by the trial record.' " *Id.* (quoting *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006)). Applying this lens, the trial court must determine whether the petition and the accompanying documentation make a " 'substantial showing of a constitutional violation.' " *People v. Domagala*, 2013 IL 113688, ¶ 33 (quoting *People v. Edwards*, 197 Ill. 2d 239, 246 (2001)).

¶ 20    If the motion to dismiss is denied, the State must answer the petition and the proceeding moves to the third stage, an evidentiary hearing at which the trial court acts as the fact finder and determines whether the evidence introduced demonstrates that the defendant is entitled to relief. 725 ILCS 5/122-5 (West 2018). The defendant argues that he met the substantial-showing standard and his petition should have advanced to the third stage. We review the dismissal of a postconviction petition *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 385 (1998).

¶ 21    Under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant arguing ineffective assistance of counsel must show not only that his or her counsel's performance was deficient but also that the defendant suffered prejudice as a result. *People v. Houston*, 226 Ill. 2d 135, 143 (2007). Specifically, under the two-prong *Strickland* test, "a defendant must show that (1) his counsel's performance *** fell below an objective standard of reasonableness, and (2) *** but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *Id*. at 144. Because a defendant must satisfy both prongs of the *Strickland* test, the failure to establish either is fatal to the claim. *Strickland*, 466 U.S. at 687.

¶ 22    The defendant argues that his trial counsel's performance fell below the constitutional minimum because, although his counsel knew that the source of Groom's injury was of paramount importance and indeed was the reason for selecting Koziol as an expert to begin with, his counsel

failed to elicit Koziol's opinion that the police investigation of the incident and Groom's injury was flawed in that it failed to collect and analyze Groom's clothing.

¶ 23 The defendant's argument is foreclosed under *People v. Johnson*, 2021 IL 126291. There, the supreme court rejected a similar argument that the defendant's trial counsel's failure to request DNA testing of certain evidence constituted ineffective assistance. The court held that, because the defendant had not provided any evidence that testing would (or even could) have provided evidence helpful to him, he had not met the requirement under *Strickland* to show prejudice: " 'Satisfying the prejudice prong necessitates a showing of actual prejudice, not simply speculation that a defendant may have been prejudiced.' " *Id.* ¶ 55 (quoting *People v. Patterson*, 2014 IL 115102, ¶ 81). The supreme court also cited with approval *People v. Scott*, 2011 IL App (1st) 100122, in which the appellate court rejected a similar argument that defense counsel should have pursued DNA testing of his shirt, as doing so could conceivably have produced exculpatory evidence. See *Johnson*, 2021 IL 126291, ¶ 57 (discussing *Scott*). It noted that, as was the case in *Scott*, "because there is no exculpatory evidence for us to consider, any opinion that could be made with respect to prejudice would be advisory" (*id.* ¶ 58) and therefore improper.

¶ 24 We acknowledge that the circumstances of this case can be partly distinguished from those in *Johnson* and *Scott* because in those cases the issue was defense counsel's failure to request the testing of evidence, whereas here the issue is defense counsel's failure to question an expert about his opinion that the police should have collected evidence that could have been tested. In our view, however, this is a distinction without a difference. In this case, as in *Johnson* and *Scott*, where it cannot be known whether an examination of Groom's clothing would have revealed any helpful evidence, Koziol's speculation about the potential results of such an examination itself had no probative value. And, although Koziol could certainly opine that the police investigation was

defective, we note that defense counsel made that same point in closing argument, repeatedly referring to the police failure to preserve Groom's clothing and the possibility that an examination of that clothing would have refuted the officers' version of events surrounding Groom's injury. The defendant has failed to make a "substantial showing" that any prejudice resulted from trial counsel's failure to question Koziol about his opinion that the police investigation was defective. In the absence of a substantial showing of "a reasonable probability that the result of the proceeding would have been different" (*Houston*, 226 Ill. 2d at 144), the trial court did not err in dismissing the petition.

¶ 25                                III. CONCLUSION

¶ 26    For the reasons stated, the judgment of the circuit court of Kane County is affirmed.

¶ 27    Affirmed.